IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SIENTRA, INC., *et al.*,[1] | ) ) ) | Case No. 24-10245 (___) |
| Debtors. | ) ) ) | (Joint Administration Requested) |

**DECLARATION OF BOB BUTLER OF
BERKELEY RESEARCH GROUP, LLC IN SUPPORT OF
MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS
PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507
(I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING;
(II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE
CLAIMS; (III) AUTHORIZING THE USE OF CASH COLLATERAL; (IV) GRANTING
ADEQUATE PROTECTION TO PREPETITION FIRST LIEN SECURED PARTIES;
(V) MODIFYING THE AUTOMATIC STAY; (VI) SCHEDULING
FINAL HEARING; AND (VII) GRANTING RELATED RELIEF**

I, Bob Butler, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1. I am a Managing Director of Berkeley Research Group, LLC ("BRG"). BRG is the proposed financial advisor to the above-captioned debtors and debtors in possession (the "Debtors").

2. I submit this declaration (the "Declaration") in support of the *Motion of Debtors for Entry of Interim and Final DIP Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing the Use of Cash Collateral; (IV) Granting Adequate Protection to Prepetition First Lien Secured Parties; (V) Modifying the*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Sientra, Inc. (1000); Mist Holdings, Inc. (4221); Mist, Inc. (1202); and Mist International, Inc. (3363). The Debtors' service address is 3333 Michelson Drive, Suite 650, Irvine, CA 92612.

*Automatic Stay; (VI) Scheduling Final Hearing; and (VII) Granting Related Relief* (the "DIP Motion") and the financing facility proposed therein (the "DIP Facility"), filed contemporaneously herewith.[2]

3. Except as otherwise indicated, all statements set forth in this Declaration are based upon (a) my personal knowledge of Debtors' operations and finances gleaned during the course of BRG's engagement by the Debtors, (b) my discussions with the Debtors' senior management, other members of the BRG team and the Debtors' other advisors, and (c) my review of relevant documents and/or my opinion based upon my experience. If I were called upon to testify, I could and would testify competently to the facts set forth herein based on such personal knowledge, discussions, review of documents and/or opinions.

## BACKGROUND AND QUALIFICATIONS

4. BRG is a global consulting firm with offices around the world, specializing in, among other things, insolvency and restructuring matters, disputes and investigations, corporate finance, and performance improvement.

5. BRG's Corporate Finance practice consists of senior financial, management consulting, accounting, and other professionals who specialize in providing financial, business, and strategic assistance typically in distressed business settings. BRG serves troubled companies, debtors, and secured and unsecured creditors, equity holders, and other parties in both in-court and out-of-court engagements.

6. BRG provides expert services, including economic and financial analyses, expert testimony, litigation support, and strategic management consulting to a range of public and private enterprises. BRG delivers independent expert testimony, original authoritative studies,

---

[2]   Capitalized terms used but not defined herein have the meanings given to such terms in the DIP Motion.

and strategic advice to legislative, judicial, regulatory, and business decision makers. BRG's other services include factual and statistical analyses, report preparation and presentation and data collection.

7.  I have over 35 years of diverse financial consulting, executive management, and public accounting experience in public and private companies across a variety of industries, including almost 22 years of experience in the bankruptcy and restructuring field. I have experience providing restructuring services to companies encountering operational and financial difficulties. I have served as an advisor on complex bankruptcy matters, including, SunEdison, Westinghouse, NRG Energy, Mirant Corporation, GSC Group, Inc., ViewRay, Inc., Egalet Corporation, Neighbors Global Holdings, Nobilis Health Corp., Dynegy, Enron, Borden Dairy Company, Foresight Energy, and Tropicana Entertainment. I also served as Chief Restructuring Officer (CRO) of Liberty Power Holdings, LLC and Spheris Inc. through their chapter 11 bankruptcies. My out-of-court restructuring experience includes serving as a financial advisor on matters in the investment management, residential real estate, consumer products, professional services, construction, and chemical manufacturing industries. Additionally, I have significant experience in mergers and acquisitions, post-merger integration, initial public offerings, and a wide range of financial and accounting issues for both publicly and privately held companies.

8.  Prior to joining BRG, I was an Executive Director with Capstone Advisory Group, LLC, and a Managing Director at the Policano & Manzo legacy practice of FTI Consulting. Prior to my restructuring experience, I was Executive Vice President of a beverage manufacturer and was Vice President - Business Development with a professional services provider. I have also worked for PricewaterhouseCoopers, BDO Seidman, and Touche Ross. I

hold a B.S. in Accounting from the University of Arizona and I am a Certified Public Accountant and a member of the American Institute of Certified Public Accountants.

## THE DEBTORS' NEED FOR FINANCING

9. The Debtors' operations are not currently profitable. The Debtors have limited liquidity to continue business in the ordinary course and satisfy accruing administrative expenses. The Debtors cannot operate on access to Cash Collateral alone; they require debtor-in-possession financing to ensure the administrative solvency of these estates. Such financing is also required to allow the Debtors to continue their ongoing process to sell substantially all of their assets as a going concern and thereby maximize value for the benefit of all constituents. Absent immediate access to Cash Collateral and the funding available under the DIP Facility, the Debtors would be unable to sustain operations, pay their employees or vendors, or achieve a successful restructuring through the chapter 11 process. Accordingly, the Debtors have an urgent and immediate need for the financing and access to Cash Collateral requested in the DIP Motion.

10. Against that backdrop, the Debtors negotiated with the DIP Secured Parties and the Prepetition First Lien Secured Parties to develop an Approved Budget, adequate protection package, and restructuring timeline that would induce the DIP Lenders to commit to the DIP Facility and the Prepetition First Lien Secured Parties to consent to the use of their Cash Collateral in light of the Debtors' circumstances. After good faith and arms' length negotiations, the Debtors, the DIP Lenders, and the Prepetition Secured Parties ultimately agreed on the terms of the DIP Facility and consensual use of Cash Collateral. The Debtors believe that the financing available under DIP Facility, along with consensual access to Cash Collateral, all in accordance with the projections in the Approved Budget, is adequate and that the funding

contemplated thereunder is reasonable and on market terms that will allow the Debtors to have adequate liquidity to satisfy their accruing administrative expenses during the course of these cases.

11. I and my team at BRG assisted the Debtors in developing a 13-week cash flow forecast for the Approved Budget for the use of Cash Collateral during these chapter 11 cases. The Approved Budget contains line items for cash flows anticipated to be received and disbursed during the time period for which the Approved Budget is prepared. I believe that the Approved Budget establishes that the Debtors will have adequate liquidity during such period.

12. Because the Debtors' access to borrowings available under the DIP Facility and consensual use of Cash Collateral is fundamental to the Debtors' continued business operations and the success of these chapter 11 cases, I believe that the relief requested in the DIP Motion is necessary and appropriate to avoid immediate and irreparable harm to the Debtors' estates and should be approved by this Court.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: February 12, 2024 /s/ Bob Butler
Bob Butler

Managing Director
BRG