## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SIENTRA, INC., *et al.*,[1] | ) Case No. 24-10245 (JTD) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | Re: Docket Nos. 15, 61 |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) AUTHORIZING THE USE OF CASH COLLATERAL; (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION FIRST LIEN SECURED PARTIES; (V) MODIFYING THE AUTOMATIC STAY; AND (VI) GRANTING RELATED RELIEF**

Upon the *Motion of Debtors for Entry of Interim and Final DIP Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing the Use of Cash Collateral; (IV) Granting Adequate Protection to Prepetition First Lien Secured Parties; (V) Modifying the Automatic Stay; (VI) Scheduling Final Hearing; and (VII) Granting Related Relief* [Docket No. 15] (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (the "Interim DIP Order") and a final order (the "Final DIP Order") pursuant to sections 105, 361, 362,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Sientra, Inc. (1000); Mist Holdings, Inc. (4221); Mist, Inc. (1202); and Mist International, Inc. (3363). The Debtors' service address is 3333 Michelson Drive, Suite 650, Irvine, CA 92612.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion or the DIP Credit Agreement (as defined herein).

363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), 506(c), 507, and 552 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-1, 4001-2, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), among other things:

(i) authorizing Sientra, Inc., in its capacity as borrower (the "DIP Borrower"), to obtain postpetition financing, and for each of the other Debtors to guarantee unconditionally (the Debtors, other than the DIP Borrower, the "DIP Guarantors," and together with the DIP Borrower, the "DIP Loan Parties") on a joint and several basis, the DIP Borrower's obligations in connection with a multi-draw senior secured super-priority priming term loan debtor-in-possession credit facility in the aggregate principal amount of up to $90 million (the "DIP Facility," and the commitments thereunder, the "DIP Commitments" and the loans made thereunder, the "DIP Loans") subject to the terms and conditions set forth in that certain Multi-draw Senior Secured Super-priority Priming Debtor-in-Possession Credit Agreement and Guaranty attached hereto as **Exhibit A** (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement"), by and among the DIP Borrower, as borrower, the DIP Guarantors, as guarantors, the several financial institutions or entities from time to time party thereto as Lenders (as defined in the DIP Credit Agreement) (the "DIP Lenders"),[3] and Deerfield Partners, L.P., as administrative and collateral agent (in such capacity, together with its successors and permitted assigns, the "DIP Agent," and together with the DIP Lenders and all holders of all other DIP Obligations (as defined below), the "DIP Secured Parties"), consisting of:

(a) New Money Loans. A multi-draw senior secured super-priority priming term loan debtor-in-possession credit facility in an aggregate principal amount not to exceed $22,500,000 (the "New Money Loan Commitments" and the term loans made thereunder, the "New Money Loans"), consisting of, subject to the DIP Credit Agreement:

(1) as approved upon entry of the Interim DIP Order, one or more draws in an aggregate principal amount not exceeding $9,000,000 (the "Interim New Money Loans"); and

(2) upon entry of this Final DIP Order and subject to the satisfaction of other conditions set forth in the DIP Credit Agreement, additional draws in an aggregate principal amount that will not, when combined with amounts advanced prior to such date, exceed the

---

[3] The DIP Lenders are also the Prepetition First Lien Lenders or affiliates thereof.

remaining unfunded New Money Loan Commitments (the "<u>Final New Money Loans</u>"); and

(b)    <u>Roll-Up Loans</u>. As approved upon entry of the Interim DIP Order concurrently with the borrowing of Interim New Money Loans, the DIP Lenders were entitled to roll up $35,000,000 of Prepetition First Lien Secured Obligations consisting of a portion of the aggregate principal amount of Prepetition First Lien Secured Obligations (as defined below) outstanding under the Prepetition First Lien Term Loan Agreement (as defined below) as of the date of such New Money Loan borrowing (the "<u>Interim Roll-Up Loans</u>"), and upon entry of this Final DIP Order concurrently with the borrowing of the Final New Money Loans, the DIP Lenders shall be entitled to roll up $32,500,000 of Prepetition First Lien Secured Obligations consisting of a portion of the aggregate principal amount of Prepetition First Lien Secured Obligations outstanding under the Prepetition First Lien Term Loan Agreement as of the date of such Final New Money Loan borrowing, along with all accrued and unpaid interest, premiums and fees thereon (including the Make Whole Amount and Exit Fee (as defined in the Prepetition First Lien Term Loan Agreement) as of the date of such Final New Money Loan borrowing (the "<u>Final Roll-Up Loans</u>," and the aggregate amount of all Prepetition First Lien Secured Obligations rolled up by the DIP Lenders in the total amount of the Interim Roll-Up Loans and Final Roll-Up Loans, shall be the "<u>Roll-Up Loans</u>", and the obligations thereunder, the "<u>DIP Roll-Up Obligations</u>", and the Prepetition First Lien Secured Obligations that are not rolled up into the Roll-Up Loans shall be the "<u>Remaining Prepetition First Lien Secured Obligations</u>"); *provided that* the Roll-Up Loans approved in the Interim DIP Order and this Final DIP Order are subject to unwinding on a dollar-for-dollar basis in the event of a Successful Challenge (as defined herein) pursuant to paragraph 12 hereof that invalidates the Prepetition First Priority Liens; *provided further* that any such Successful Challenge shall first be applied to the Roll-Up Loans before application to the Prepetition First Priority Liens securing the Remaining Prepetition First Lien Secured Obligations.  The Roll-Up Loans shall be allocated (A) first, to reduce the aggregate outstanding amount of Prepetition Original Loans (as defined below and in the DIP Facility) held by the Prepetition First Lien Term Loan Lenders, and (B) second (only to the extent no Prepetition Original Loan amounts remain outstanding to be allocated), to reduce the aggregate outstanding amount of Prepetition Disbursement Loans (as defined below and in the DIP Facility) held by the Prepetition First Lien Term Loan Lenders the Roll-Up Loans. The Roll-Up Loans shall be automatically deemed funded pursuant to the DIP Credit Agreement (on a cashless, dollar-for-dollar basis) and shall constitute DIP Obligations on the day such roll-up becomes effective, without constituting a novation, and shall satisfy and discharge an equal amount of Prepetition First Lien Secured Obligations as if a payment in such amount had been made under the Prepetition First Lien Term Loan Facility (as defined below) on such date. The Roll-Up Loans

shall be deemed to be made by each DIP Lender (the "<u>Roll-Up Lenders</u>") in an amount equal to such DIP Lender's pro rata share of the aggregate amount of the Prepetition First Lien Secured Obligations owing to all Roll-Up Lenders on the Closing Date and the outstanding aggregate amount of the Prepetition First Lien Secured Obligations held by any such DIP Lender shall be automatically and irrevocably, subject to the rights and limitations set forth in paragraph 12 of this Final DIP Order, deemed reduced by the amount of the Roll-Up Loans.

(ii)     authorizing the Debtors to execute, deliver, and perform under the DIP Credit Agreement, the security agreement, and any other related documents, including pledge agreements, mortgages, guaranties, promissory notes, certificates, instruments, the Fee Letter (as defined in the DIP Credit Agreement) and such other documents that may be reasonably necessary, desirable or required to implement the DIP Facility and perform thereunder and/or that may be reasonably requested by the DIP Agent (acting at the direction of the Required DIP Lenders) or DIP Lenders (collectively, as such may be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, the "<u>DIP Loan Documents</u>"), each of which shall be in form and substance satisfactory to the DIP Secured Parties; and to perform such other acts as may be reasonably necessary, desirable or appropriate in connection with the DIP Loan Documents;

(iii)    granting to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, (a) DIP Liens (as defined below) on all of the DIP Collateral (as defined below) pursuant to sections 364(c)(2), (c)(3), and (d) of the Bankruptcy Code, which DIP Liens shall be, subject to the Carve Out (as defined below), senior to all liens, security interests, and pledges on the DIP Collateral, except for only Permitted Prior Liens (as defined below) and (b) DIP Superpriority Claims pursuant to section 364(c)(1) of the Bankruptcy Code, subject and subordinate to the Carve Out;

(iv)    authorizing and directing the Debtors to pay all principal, interest, fees, costs, expenses, and other amounts payable under the DIP Loan Documents as such become due and payable, as provided and in accordance therewith;

(v)     authorizing the Debtors to use Cash Collateral (as defined below) and the proceeds of the New Money Loans in accordance with this Final DIP Order, the Approved Budget (as defined below) (including with respect to Permitted Variances), and the DIP Loan Documents (including the DIP Credit Agreement), as further described herein to pay for working capital needs, and to provide working capital for other general corporate purposes, of the Debtors in the ordinary course of business and for the costs and expenses of administering the Cases, including for payment of any Prepetition First Lien Adequate Protection Obligations (all as defined below) and reasonable and documented transaction costs, fees, and expenses incurred in connection with the restructuring to be implemented through the Chapter 11 Cases;

-4-

(vi)     authorizing the Debtors to perform such other and further acts as may be necessary or desirable in connection with this Final DIP Order, the DIP Loan Documents (including the DIP Credit Agreement) and the transactions contemplated hereby and thereby, subject to the Approved Budget;

(vii)    modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final DIP Order;

(viii)   granting adequate protection to the Prepetition First Lien Secured Parties as provided in this Final DIP Order; and

(ix)     providing for the immediate effectiveness of this Final DIP Order and waiving any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

Having considered the Motion, the *Declaration of Ron Menezes in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 3] (the "First Day Declaration"), the *Declaration of Vladimir Moshinsky of Miller Buckfire* [Docket No. 17] (the "Moshinsky Declaration"), the *Declaration of Bob Butler of Berkeley Research Group, LLC* [Docket No. 18] (the "Butler Declaration"), and evidence submitted or proffered at the hearing on the Motion held on February 14, 2024 (the "Interim Hearing"); and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having determined that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having considered the Motion, the First Day Declaration, the Moshinsky Declaration, the Butler Declaration, and the arguments of counsel and the evidence submitted or proffered at the Interim Hearing; and the Court having entered the Interim DIP Order on February 14, 2024 [Docket No. 14]; and the Court having found that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Bankruptcy Rule 4001; and the Court having found that the final relief requested

in the Motion is in the best interests of the Debtors and their respective estates, creditors, and other parties in interest; and it appearing that the Debtors' entry into the DIP Facility is a sound and prudent exercise of the Debtors' business judgment; and the Court having found that good and sufficient cause exists for the granting of the final relief requested in the Motion after having given due deliberation to the Motion and all of the proceedings had before the Court in connection with the Motion, **THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.     <u>Disposition</u>.   The relief requested in the Motion is granted on a final basis in accordance with the terms of this Final DIP Order.  Any objections to the Motion with respect to the entry of this Final DIP Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Final DIP Order shall become effectively immediately upon its entry and any applicable stay (including under Bankruptcy Rule 6004) is waived to permit such effectiveness.

B.     <u>Petition Date</u>.   On February 12, 2024 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>"), commencing the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>").

C.     <u>Debtors in Possession</u>. The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

---

[4]     Where appropriate in this Final DIP Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052.

D.      Jurisdiction and Venue. This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution. Venue of the Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought herein are sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 9013, and 9014, and Local Rules 2002-1, 4001-1, 4001-2, 7007-1, 9013-1, 9013-4, and 9014-2.

E.      Committee. On February 23, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 83].

F.      Debtors' Stipulations. In requesting the DIP Facility and the use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lenders and the Prepetition First Lien Secured Parties to agree to provide, or consent to, the DIP Facility, the Debtors' access to the Cash Collateral, and subordination of the Prepetition First Priority Liens to the Carve Out and the DIP Liens (which DIP Liens shall be subject and subordinate to the Carve Out) and as a condition to providing financing under the DIP Facility and consenting to the use of Cash Collateral, subject to the rights of the Committee or any other parties-in-interest (other than the Debtors) to the extent set forth in paragraph 12 hereof, as approved upon entry of the Interim DIP Order and approved pursuant to this Final DIP Order on a final basis, the Debtors permanently and irrevocably admitted, stipulated, acknowledged, and agreed, as follows (collectively, the "Debtors' Stipulations"):

-7-

(i)    Prepetition First Lien Term Loan Facility. Pursuant to that certain Amended and Restated Facility Agreement, dated as of October 12, 2022 (as amended, or otherwise modified from time to time prior to, and as in effect on, the date hereof, the "Prepetition First Lien Term Loan Facility"), by and among, Sientra, Inc. as borrower, the subsidiaries of Sientra, Inc. party thereto as Subsidiary Guarantors (as defined therein), the lenders party thereto (the "Prepetition First Lien Lenders"), and Deerfield Partners, LP, as administrative agent (the "Prepetition First Lien Term Loan Agent," and together with the Prepetition First Lien Lenders, the "Prepetition First Lien Secured Parties"), the Debtors incurred indebtedness to the Prepetition First Lien Lenders (the "Prepetition First Lien Claims").

(ii)   Prepetition First Lien Secured Obligations. As of the Petition Date, each of the Debtors was justly and lawfully indebted and liable to the Prepetition First Lien Lenders, without defense, counterclaim, or offset of any kind, in the aggregate amount of not less than $71,780,000 in principal amount of loans outstanding under the Prepetition First Lien Term Loan Facility, consisting of two tranches, one with an aggregate amount of not less than $48,780,000 (the "Prepetition Original Loan") and the other with an aggregate amount of not less than $23,000,000 (the "Prepetition Disbursement Loan") in principal outstanding respectively (including interest that was payable in kind and added to the principal amount in accordance with the Prepetition First Lien Term Loan Facility prior to the Petition Date), plus any and all unpaid interest (including default interest), premium (including the Make Whole Amount and the Exit Fee that became due and payable on the Petition Date), reimbursement obligations, fees, costs, expenses (including attorneys' fees, financial advisors' fees, related expenses, and disbursements), charges, disbursements, indemnification obligations, and any other amounts, contingent or otherwise, whenever arising or accruing, that may be due, owing, or chargeable in respect thereof, in each case, to the extent provided in the Prepetition First Lien Term Loan Facility (the "Prepetition First Lien Secured Obligations").

(iii)  Prepetition First Priority Liens. As of the Petition Date, liens and security interests securing the Prepetition First Lien Term Loan Facility (the "Prepetition First Priority Liens") granted to the Prepetition First Lien Agent on behalf of the Prepetition First Lien Secured Parties (including from and after the deemed funding of the Roll-Up Loans, as applicable, Prepetition First Lien Collateral Documents (as defined below), which shall continue in effect to secure the Remaining Prepetition First Lien Secured Obligations), (A) have been properly recorded and are valid, binding, enforceable, non-avoidable and fully perfected liens and security interests in the Collateral (as defined in the Prepetition First Lien Term Loan Facility, the "Prepetition First Lien Collateral"), (B) constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and perfected first-priority security interest in and liens on the Prepetition First Lien Collateral, (C) encumber all of the Prepetition First Lien Collateral, as the same existed on the Petition Date, (D) are not subject to any offset, contest, objection, recovery, recoupment, reduction, defense, counterclaim, subordination, recharacterization, disgorgement, disallowance,

-8-

avoidance, challenge, or any other claim or Cause of Action[5] of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law, or other applicable law, (E) were granted to or for the benefit of the Prepetition First Lien Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or the commitments and other financial accommodations or consideration secured or obtained thereby, (F) are entitled to adequate protection as set forth herein, and (G) without giving effect to this Final DIP Order, are senior with priority over any and all other liens on or security interests in the Prepetition First Lien Collateral, subject and subordinate only to the Permitted Prior Liens.

(iv)    <u>Prepetition First Lien Collateral</u>. To secure the Prepetition First Lien Secured Obligations, the Debtors entered into certain security agreements and other instruments, including the Guaranty and Security Agreement, dated as of October 12, 2022, and the other Collateral Documents (as defined in the Prepetition First Lien Term Loan Facility) (collectively, as amended, restated, amended and restated, supplemented or otherwise modified from time to time, and together with any ancillary collateral documents, including any related mortgages and deeds of trust, the "<u>Prepetition First Lien Collateral Documents</u>"). Pursuant to the Prepetition First Lien Collateral Documents, the Debtors granted to the Prepetition First Lien Term Loan Agent, for the benefit of their respective Prepetition First Lien Secured Parties, the Prepetition First Priority Liens on the Prepetition First Lien Collateral.

(v)    <u>Cash Collateral</u>. Any and all of the Debtors' cash, including all amounts on deposit or maintained in any banking, checking, or other deposit accounts by the Debtors, any amounts generated by the collection of accounts receivable or other disposition of the Prepetition First Lien Collateral or deposited into the Debtors' banking, checking, or other deposit accounts, in each case as of or after the Petition Date, and the proceeds of any of the foregoing is the Prepetition First Lien Secured Parties' cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>").

(vi)    <u>Bank Accounts</u>. The Debtors acknowledge and agree that as of the Petition Date, none of the Debtors has either opened or maintains any bank accounts other than the accounts listed in the exhibit attached to the *Interim Order (I) Authorizing The Debtors To (A) Continue Operating Cash Management System, (B) Honor And Pay Bank Fees, (C) Maintain Existing Business Forms, (II) Scheduling A Final*

---

[5]    As used in this Final DIP Order, "<u>Causes of Action</u>" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, or offset of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the entry of this Final DIP Order, in contract or in tort, in law (whether local, state, or federal U.S. or non-U.S. law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. law.

*Hearing, And (III) Granting Related Relief* [Docket No. 51] or an order approving the *Motion for Entry of Interim and Final Orders Authorizing the Debtors to (A Continue Operating Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Granting Related Relief* [Docket No. 6] on a final basis (the "<u>Cash Management Order</u>").

(vii)    <u>No Control</u>. None of the Prepetition First Lien Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Final DIP Order or the Prepetition First Lien Secured Obligations.

(viii)   <u>Prepetition First Lien Secured Obligations</u>. The Prepetition First Lien Secured Obligations owing to the Prepetition First Lien Secured Parties (including, from and after the deemed funding of the Roll-Up Loans, the Remaining Prepetition First Lien Secured Obligations) constitute legal, valid, and binding obligations of the Debtors, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition First Lien Secured Obligations owing to the Prepetition First Lien Secured Parties is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination, or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any cases under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>").

(ix)    <u>No Challenges/Claims</u>. No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition First Priority Liens or Prepetition First Lien Secured Obligations exist, and no portion of the Prepetition First Priority Liens or Prepetition First Lien Secured Obligations is subject to any challenge or defense including impairment, set-off, avoidance, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (equitable or otherwise), attack, offset, defense, counterclaims or cross-claims pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtors and their respective estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code) objections, challenges, causes of action, and/or choses in action against any of the Prepetition First Lien Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the Prepetition First Lien Term Loan Facility, the Prepetition First Lien Secured Obligations, the Prepetition First Priority Liens, or otherwise, whether arising at law or at equity, including any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or

other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents.

(x)   <u>Default</u>. The Debtors are in default under the Prepetition First Lien Term Loan Facility, and an event of default has occurred under the Prepetition First Lien Term Loan Facility.

(xi)   <u>Good Faith</u>. The Prepetition First Lien Secured Parties have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of granting the DIP Liens and the Prepetition First Lien Adequate Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents relating to any and all transactions contemplated by the foregoing.

G.   <u>Cash Collateral</u>. All of the Debtors' cash (subject to certain exceptions set out in the Prepetition First Lien Collateral Documents), including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition First Lien Secured Parties.

H.   <u>Findings Regarding Postpetition Financing and Use of Cash Collateral</u>.

(a)   The Debtors have requested from each of the DIP Secured Parties, and the DIP Secured Parties are willing to provide financing to the Debtors subject to: (i) for the New Money Loans, entry of this Final DIP Order; (ii) Court approval of the terms and conditions of the DIP Facility and the DIP Loan Documents; (iii) satisfaction or waiver of the closing conditions set forth in the DIP Loan Documents; and (iv) findings by this Court that the DIP Facility is essential to the Debtors' estates, that the DIP Secured Parties are extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final DIP Order and the DIP Loan Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(b)    The Debtors have a continued need to obtain (i) postpetition financing pursuant to the DIP Facility and (ii) permission to use Cash Collateral (solely to the extent consistent with the Approved Budget, subject to any Permitted Variance set forth herein and in the DIP Credit Agreement), in order to, among other things, (A) permit the orderly continuation of the operation of their business, (B) maintain business relationships, (C) make capital expenditures, (D) satisfy other general corporate, working capital and operational needs, (E) fund costs and expenses related to the Chapter 11 Cases, (F) fund the payment of interest, fees, costs, and expenses related to the DIP Facility arising under the DIP Loan Documents, and (G) fund the payment of other fees and expenses set forth in the Approved Budget, for the benefit of the Debtors' stakeholders.  The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers requires the availability of working capital from the DIP Facility and Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest. The Debtors do not have sufficient available sources of working capital and financing to preserve the value of their businesses without the ability to borrow under the DIP Facility and use Cash Collateral.  The Debtors and their estates will be immediately and irreparably harmed if the financing under the DIP Facility is not approved on a final basis pursuant to the terms of this Final DIP Order and, as applicable, the DIP Loan Documents, or if the Debtors are unable to use Cash Collateral.  Entry of this Final DIP Order is necessary and appropriate to avoid such harm to the Debtors, their estates, and other parties in interest.

(c)    As set forth in the DIP Declaration, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the terms of the DIP Facility under the DIP Loan Documents. The Debtors are unable to obtain, pursuant to sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code, (i) unsecured credit

allowable under section 503(b) of the Bankruptcy Code as an administrative expense, (ii) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien, or (iii) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. The Debtors are further unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code without, as provided for herein, (x) granting to the DIP Secured Parties the rights, remedies, privileges, benefits and protections provided herein and in the DIP Loan Documents, including the DIP Liens and the DIP Superpriority Claim (as defined below), and (y) granting the Prepetition First Lien Secured Parties the rights, remedies, privileges, benefits and protections provided herein, including the Prepetition First Lien Adequate Protection Liens, subject to the priorities set forth in this Final DIP Order.  The Roll-Up Loans are an integral part of the DIP Facility, without which the DIP Lenders would be unwilling to extend the New Money Loan Commitments.

(d)     The DIP Facility and this Final DIP Order have been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Loan Documents, including all loans made to and guarantees issued by the Debtors pursuant to the DIP Loan Documents and all other obligations under the DIP Loan Documents (collectively, the "DIP Obligations") shall be deemed to have been extended by the DIP Secured Parties in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Final DIP Order or any provision hereof is vacated or reversed or modified on appeal, and any liens or claims granted to, or payments made

to, the DIP Agent or the DIP Lenders hereunder arising prior to the effective date of any such reversal or modification of this Final DIP Order shall be governed in all respects by the original provisions of this Final DIP Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

(e)     Subject to paragraph 12 below, the Debtors have agreed to provide to each of the Prepetition First Lien Secured Parties with respect to the Prepetition First Priority Liens that, from time to time, secure the Remaining Prepetition First Lien Secured Obligations from and after the applicable deemed funding of the Roll-Up Loans, pursuant to sections 105, 361, 362, and 363(e) of the Bankruptcy Code, adequate protection of their interests in the Prepetition Collateral securing the Remaining Prepetition First Lien Secured Obligations, including Cash Collateral, for any diminution in the value of such interests.

(f)     In light of the Prepetition First Lien Secured Parties' agreement to subordinate their liens and superpriority claims to the DIP Obligations and the Carve Out and to permit the use of their Cash Collateral as set forth herein, upon entry of this Final DIP Order, each of the Prepetition First Lien Secured Parties shall be entitled to the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to such parties with respect to the proceeds, products, offspring, or profits of any of the DIP Collateral or such Prepetition Collateral, as applicable.

(g)     Holders constituting Required Lenders (as such term is defined in the Prepetition First Lien Term Loan Facility) have consented to, conditioned on the entry of this Final DIP Order, the Debtors' incurrence of the DIP Facility, and proposed use of Cash Collateral on the terms and conditions set forth in this Final DIP Order, including the terms of the adequate protection provided for in this Final DIP Order.

-14-

I.    <u>Section 506(c)</u>. Subject to and upon entry of this Final DIP Order, the DIP Secured Parties have negotiated for and the Debtors and DIP Secured Parties are entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code in respect of the DIP Collateral, subject to the Carve Out.

J.    <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>. The terms and conditions of the DIP Facility, the DIP Loan Documents, and the fees paid and to be paid thereunder to the DIP Secured Parties, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured postpetition financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Good cause has been shown for entry of this Final DIP Order, and entry of this Final DIP Order is in the best interests of the Debtors and their estates, creditors, and other stakeholders. The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Secured Parties, the DIP Agent, and the Prepetition First Lien Secured Parties with the assistance and counsel of their respective advisors.  Credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made or extended in good faith by the DIP Secured Parties, within the meaning of section 364(e) of the Bankruptcy Code and shall be entitled to the full protection of section 364(e). The Prepetition First Lien Secured Parties have agreed to the use of Cash Collateral in good faith, and the Prepetition First Lien Secured Parties shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Final DIP Order or any provision hereof is reversed or modified on appeal.  Based on the Motion, the First Day Declaration, the Moshinsky Declaration, and the Butler Declaration, and on the record presented at the Final Hearing, the terms of the DIP

Facility are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration.

K.     Notice. Upon the record presented to this Court at the Interim Hearing, and under the exigent circumstances set forth therein, notice of the Motion and the relief requested thereby and granted in this Final DIP Order has been provided in accordance with Bankruptcy Rules 4001(b) and 4001(c)(1) and Local Rule 9013-1(m), which notice was appropriate under the circumstances and sufficient for the Motion.  No other or further notice of the Motion or entry of this Final DIP Order is required.  The final relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.     Financing Approved. The Motion is GRANTED on a final basis as set forth herein, the financing described herein is authorized and approved, and the use of Cash Collateral and provision of adequate protection on a final basis is authorized, in each case subject to the terms and conditions set forth in this Final DIP Order and the other DIP Loan Documents.

2.     Objections Overruled. Any and all objections to this Final DIP Order, to the extent not withdrawn, waived, settled, or otherwise resolved, and all reservations of rights included therein, are hereby denied and OVERRULED on the merits.  This Final DIP Order shall become effective immediately upon its entry.

3.     Authorization of the DIP Facility and the DIP Loan Documents.

(a)     The Debtors are hereby immediately authorized and empowered, as approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis,

to enter into, and execute and deliver, the DIP Loan Documents, including the DIP Credit Agreement, and such additional documents, instruments, certificates, and agreements as may be reasonably required or requested by the DIP Secured Parties or the Prepetition First Lien Secured Parties to implement the terms or effectuate the purposes of this Final DIP Order and the DIP Loan Documents and to effectuate the funding of the Roll-Up Loans and deemed repayment of a corresponding amount of Prepetition First Lien Secured Obligations. To the extent not previously entered into as of the date hereof, the Debtors and the DIP Secured Parties shall negotiate the DIP Loan Documents in good faith, and in all respects such DIP Loan Documents shall be, subject to the terms of this Final DIP Order, consistent with the terms of the DIP Credit Agreement and otherwise reasonably acceptable to the DIP Agent and the required lenders under and pursuant to the DIP Credit Agreement (the "Required DIP Lenders"), *provided* that counsel to the Debtors shall provide counsel to the Committee with copies of any DIP Loan Documents on a professionals' eyes only basis upon reasonable request. The DIP Credit Agreement and other DIP Loan Documents shall govern and control the DIP Facility. As approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, the DIP Agent (acting at the direction of the Required DIP Lenders) is hereby authorized to execute and enter into its respective obligations under the DIP Loan Documents, subject to the terms and conditions set forth therein and this Final DIP Order. As approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, the DIP Loan Documents shall constitute valid and binding obligations of the Debtors enforceable in accordance with their terms. To the extent there exists any conflict among the terms and conditions of the Motion, the DIP Loan Documents, and this Final DIP Order, the terms and conditions of this Final DIP Order shall govern and control. To

the extent there is a conflict between the terms and conditions of the Motion and the DIP Loan Documents, the terms and conditions of the DIP Loan Documents shall govern.

(b)    As approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, the DIP Borrower was authorized to borrow and the DIP Guarantor were authorized to guaranty the Interim New Money Loans, and the DIP Borrower is hereby authorized to borrow, and the DIP Guarantors are hereby authorized to guaranty, borrowings of the Final New Money Loans, which will be made available to the DIP Borrower on or after the date of this Final DIP Order, subject to, and in accordance with, this Final DIP Order.  Further, upon entry of this Final DIP Order, concurrently with the borrowing of Final New Money Loans, the Final Roll-Up Loans shall be automatically deemed funded pursuant to the DIP Credit Agreement (on a cashless, dollar-for-dollar basis) and shall constitute DIP Obligations on the day such roll-up becomes effective, without constituting a novation, and shall satisfy and discharge an equal amount of Prepetition First Lien Secured Obligations as if a payment in such amount had been made under the Prepetition First Lien Term Loan Facility (as defined below) on such date. The Final Roll-Up Loans shall be deemed to be made by each Roll-Up Lender in an amount equal to such Roll-Up Lender's pro rata share of the aggregate amount of the Prepetition First Lien Secured Obligations owing to all Roll-Up Lenders on the Closing Date and the outstanding aggregate amount of the Prepetition First Lien Secured Obligations held by any such DIP Lender shall be automatically and irrevocably deemed reduced by the amount of the Roll-Up Loans

(c)    Pursuant to the terms of this Final DIP Order and the DIP Loan Documents, proceeds of the DIP Loans shall be used solely for the purposes permitted under the DIP Loan Documents and this Final DIP Order, and in accordance with the Approved Budget, subject to any Permitted Variance as set forth in this Final DIP Order and the DIP Loan Documents. Attached as

**Exhibit B** to this Final DIP Order and incorporated herein by reference is a budget prepared by the Debtors and approved by the Required DIP Lenders in accordance with the DIP Credit Agreement, which, for the avoidance of doubt, shall constitute an "Approved Budget."

(d)       In furtherance of the foregoing and without further approval of this Court, each Debtor was authorized, effective upon entry of the Interim DIP Order, and is hereby authorized on a final basis, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted solely to the extent necessary, to perform all acts and to make, execute, and deliver all DIP Loan Documents (including the DIP Credit Agreement, any security and pledge agreement, and any mortgage to the extent contemplated by the DIP Loan Documents), and to pay all reasonable and documented fees and expenses (including all amounts owed to the DIP Lenders and the DIP Agent under the DIP Loan Documents) in connection with or that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility and this Final DIP Order, including:

(1)       the execution, delivery, and performance of the DIP Loan Documents, including the DIP Credit Agreement, the Security Agreement (as defined in the DIP Credit Agreement), and any other Security Documents (as defined in the DIP Credit Agreement);

(2)       the execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Loan Documents (in each case in accordance with the terms of the applicable DIP Loan Documents and in such form as the Debtors, the DIP Agent (acting at the direction of the Required DIP Lenders), and the Required DIP Lenders may reasonably agree), it being understood that no further Court approval shall be required for amendments, waivers, consents, or other modifications to and under the DIP Loan Documents or the DIP Obligations that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder; *provided* that any amendments, waivers, consents, or other modifications to and under the DIP Loan Documents or the DIP Obligations that shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of

interest payable thereunder shall be subject to the notice requirements set forth in paragraph 42;

(3)    the non-refundable payment to each of and/or on behalf of the DIP Secured Parties, as applicable, the fees referred to in the DIP Loan Documents, including (x) all fees and other amounts owed to the DIP Agent and the DIP Lenders and (y) all reasonable and documented costs and expenses as may be due from time to time, including the fees payable to the DIP Lenders for the New Money Loan Commitment Payment and the Termination Payment (each (as defined in the DIP Credit Agreement), the reasonable and documented fees and expenses of counsel and other professionals retained as provided for in the DIP Loan Documents and this Final DIP Order (whether incurred before or after the Petition Date), including, for the avoidance of doubt, (a) Sullivan & Cromwell LLP (as counsel to the DIP Lenders), Potter Anderson & Corroon LLP (as local bankruptcy counsel to the DIP Lenders) and any other conflicts counsel or other professionals necessary or advisable to represent the interests of the DIP Lenders in connection with the Chapter 11 Cases (collectively, the "DIP Lender Advisors"); and (b) Sullivan & Cromwell LLP and Potter Anderson & Corroon LLP, as counsel to the DIP Agent; and, to the extent necessary to exercise its rights and fulfill its obligations under the DIP Loan Documents, one counsel to the DIP Agent in each local jurisdiction, which such fees and expenses shall not be subject to the approval of the Court, nor shall any recipient of any such payment be required to file with respect thereto any interim or final fee application with the Court, *provided* that any fees and expenses of a professional shall be subject to the provisions of paragraph 19 of this Final DIP Order;

(4)    the payments on account of the Prepetition First Lien Adequate Protection Obligations provided for in this Final DIP Order; and

(5)    the performance of all other acts required under or in connection with the DIP Loan Documents.

(e)    Subject and subordinate to the Carve Out, as approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, the DIP Loan Documents, the DIP Obligations, and the DIP Liens shall constitute valid, binding, and non-avoidable obligations of the Debtors enforceable against each Debtor in accordance with their respective terms and the terms of this Final DIP Order for all purposes during the Chapter 11 Cases and any Successor Cases.  Except as permitted by this Final DIP Order, no obligation, payment, transfer,

-20-

or grant of security under the DIP Credit Agreement, the other DIP Loan Documents, or this Final DIP Order, subject to paragraph 12 of this Final DIP Order, shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including under sections 502(d), 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim. All  payments or proceeds remitted (a) to or on behalf of the DIP Agent on behalf of any DIP Secured Parties or (b) subject to paragraph 12 below, to or on behalf of the Prepetition First Lien Secured Parties, pursuant to the DIP Loan Documents, the provisions of this Final DIP Order, or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment, or other liability, including any such claim or charge arising out of or based on, directly or indirectly, section 506(c) or the "equities of the case" exception of section 552(b) of the Bankruptcy Code.

(f)    The DIP Guarantors were authorized upon entry of the Interim DIP Order and directed effective as of the Closing Date and are hereby authorized and directed on a final basis to jointly, severally, and unconditionally guarantee, and shall be deemed to have guaranteed, in full, all of the DIP Obligations of the DIP Borrower.

4.    <u>Approved Budget</u>. The proceeds of the DIP Facility and Cash Collateral shall be used solely in accordance with the DIP Loan Documents and the Approved Budget, subject to the Permitted Variance. The Debtors shall comply in all respects with the terms of the DIP Loan Documents with respect to, among other things, the delivery and compliance with the Approved Budget and all obligations related thereto, including by delivering to the Prepetition First Lien Term Loan Agent and the advisors to the Committee the Approved Budget and any subsequent

Budget Supplement (as defined below), each of which shall be subject to the approval by the DIP Lenders as set forth in the DIP Credit Agreement.

5.     <u>Budget and Variance Reporting</u>. The Debtors will deliver to the DIP Agent, the DIP Lenders, the Prepetition First Lien Term Loan Agent, the DIP Lender Advisors, and the advisors to the Committee, a supplement to the Approved Budget then in effect (each, a "<u>Budget Supplement</u>"), in addition to a variance report, in each case, in form, scope and detail satisfactory to the Required DIP Lenders, at such times as required and set forth in the DIP Credit Agreement.

6.     <u>Access to Records</u>.  The Debtors shall provide the DIP Lender Advisors, the DIP Lenders, the Prepetition First Lien Term Loan Agent with all reporting and other information required to be provided to the DIP Agent under the DIP Loan Documents.  In addition to, and without limiting, whatever rights to access the DIP Secured Parties have under the DIP Loan Documents, upon reasonable advance notice to counsel to the Debtors (email being sufficient), at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the DIP Secured Parties and the advisors to the Committee to have reasonable access to (a) inspect the Debtors' assets, and (b) all information (including historical information and the Debtors' books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtors and other company advisors (during normal business hours), and the DIP Secured Parties and the advisors to the Committee shall be provided with access to such information as they shall reasonably request, excluding any information for which confidentiality is owed to third parties, information subject to attorney client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law or any binding agreement entered into prior to the date of this Final DIP Order that would violate confidentiality obligations.

7.      <u>DIP Superpriority Claims</u>. Subject and subordinate only to the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, as approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims of the DIP Secured Parties against each of the Debtors' estates (the "<u>DIP Superpriority Claims</u>") (without the need to file any proof of claim) to the extent set forth in the Bankruptcy Code, with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise, which allowed claims shall for the purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (excluding claims and causes of action under sections 502(d), 544, 545, 547, 548, and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code whether pursuant to federal law or applicable state law (collectively, the "<u>Avoidance Actions</u>"), but including any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement, or otherwise (collectively, the "<u>Avoidance Action Proceeds</u>"); *provided, however*, that, in the event of an enforcement of remedies in accordance with the terms of this Final DIP Order, the Avoidance Action Proceeds and the Insurance Proceeds (as defined below) shall only be used to satisfy the DIP Superpriority Claims in the event that all other sources of recovery are first exhausted and the DIP Superpriority

Claims have not been indefeasibly paid in full. Except as set forth in this Final DIP Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

8.      <u>DIP Liens</u>. As security for the DIP Obligations, as approved upon entry of the Interim DIP Order, perfected upon the Closing Date and pursuant to this Final DIP Order on a final basis, and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP Agent or any DIP Lender of, or over, any DIP Collateral (as defined below), the following security interests and liens are hereby granted by the Debtors to the DIP Agent, for the benefit of the DIP Secured Parties (all property identified in clause (a) and (b) below being collectively referred to as the "<u>DIP Collateral</u>"), subject and subordinate only to (x) valid, perfected and unavoidable liens (including any liens arising by statute or operation of law, or that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code), if any, existing as of the Petition Date that are senior to the liens or security interests of the Prepetition First Lien Secured Parties as of the Petition Date and are permitted by the Prepetition First Lien Term Loan Facility (the "<u>Permitted Prior Liens</u>"), and (y) the Carve Out (all such liens and security interests granted to the DIP Agent, for the benefit of the DIP Lenders, pursuant to this Final DIP Order and the DIP Loan Documents, the "<u>DIP Liens</u>"):

        (a)      <u>First Priority Lien On Any Unencumbered Property</u>. Subject and subordinate only to the Carve Out, as approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable, automatically, and properly perfected first priority senior security interest in and lien upon all property of the Debtors,

-24-

whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to Prepetition First Priority Liens or Permitted Prior Liens including (in each case, to the extent not subject to valid, perfected, and non-avoidable liens), all prepetition property and postpetition property of the Debtors' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including unencumbered cash (and any investment of such cash) of the Debtors (wherever held); all equipment, all goods, all inventory, all accounts, cash, payment intangibles, bank accounts and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date); all insurance policies and proceeds thereof (such proceeds, the "Insurance Proceeds"), equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all interest rate hedging agreements of the Debtors; all owned real estate, real property leaseholds and fixtures of the Debtors (except to the extent any DIP Liens thereon would be prohibited by the applicable lease after giving effect to any applicable law regarding the enforceability of such prohibitions); patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property of the Debtors; all commercial tort claims of the Debtors; and all claims and causes of action (including causes of action arising under section 549 of the Bankruptcy Code, claims arising on account of transfers of value from a Debtor to (x) another Debtor and (y) a non-Debtor affiliate incurred on or following the Petition Date), and any and all proceeds, products, rents, and profits of the foregoing, all products and proceeds of the foregoing, excluding Avoidance Actions, but including the Avoidance Action Proceeds; *provided, however*, that, in the event of an enforcement of remedies in accordance with the terms of this Final DIP Order, the Avoidance Action Proceeds

and the Insurance Proceeds shall only be used to satisfy the DIP Superpriority Claims in the event that all other sources of recovery are first exhausted and the DIP Superpriority Claims have not been indefeasibly paid in full (collectively, the "Previously Unencumbered Property"); *provided further*, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein or in the DIP Loan Documents, to the extent a lien cannot attach to any of the foregoing pursuant to applicable law (including to the extent applicable law respects restrictions on the attachment of liens under the terms of applicable non-residential real property leases and agreements), the liens granted pursuant to this Final DIP Order shall attach solely to the Debtors' economic rights, including any and all proceeds of the foregoing.

(b)    Liens Priming the Prepetition First Priority Liens. Subject and subordinate only to the Carve Out and Permitted Prior Liens, as approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all assets and property of the Debtors, subject to paragraph (c) below; *provided*, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein or in the DIP Loan Documents, to the extent a lien cannot attach to any of the foregoing pursuant to applicable law (including to the extent applicable law respects restrictions on the attachment of liens under the terms of applicable non-residential real property leases and agreements), the liens granted pursuant to this Final DIP Order shall attach solely to the Debtors' economic rights, including any and all proceeds of the foregoing.

(c)    Liens Junior to Certain Other Liens. Subject and subordinate only to the Carve Out and Permitted Prior Liens, as approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, pursuant to section 364(c)(3) of the Bankruptcy

Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all prepetition and postpetition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 8, as to which the liens and security interests in favor of the DIP Lenders will be as described in such clauses).

9.      <u>Adequate Protection for the Prepetition First Lien Secured Parties</u>.

(a)      Subject to the Carve Out, paragraph 12 below, and the other terms of this Final DIP Order, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, the Debtors have agreed to provide the Prepetition First Lien Secured Parties with respect to the Prepetition First Priority Liens that, from time to time, secure the Remaining Prepetition First Lien Secured Obligations from and after the applicable deemed funding of the Roll-Up Loans adequate protection of their interests in the Prepetition First Lien Collateral (including Cash Collateral) securing the Remaining Prepetition First Lien Secured Obligations, to the extent of and in an amount equal to the aggregate diminution in value of such interests from and after the Petition Date (each such diminution, a "<u>First Lien Diminution in Value</u>") resulting from the imposition of the priming DIP Liens on such Prepetition First Lien Collateral, the Carve Out, the Debtors' use of such Prepetition First Lien Collateral (including Cash Collateral), and the imposition of the automatic stay (each Prepetition First Lien Lender's claim for such First Lien Diminution in Value, a "<u>Prepetition First Lien Adequate Protection Claim</u>"). On account of such Prepetition First Lien Adequate Protection Claims, the Prepetition First Lien Term Loan Agent, for the benefit of itself and the Prepetition First Lien Secured Parties for which it serves as Prepetition Agent, as approved upon entry of the

Interim DIP Order and pursuant to this Final DIP Order on a final basis is hereby granted the following (collectively, the "Prepetition First Lien Adequate Protection Obligations"):

(b)     Prepetition First Lien Adequate Protection Liens. As security for and solely to the extent of any First Lien Diminution in Value of the Prepetition First Lien Collateral, subject and subordinate only to the Carve Out and the DIP Liens, additional and replacement, valid, binding, enforceable, non-avoidable, and effective and automatically perfected postpetition security interests in and liens as of the Closing Date (together, the "Prepetition First Lien Adequate Protection Liens"), without the necessity of the execution by the Debtors (or recordation or other filing), of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all DIP Collateral excluding Avoidance Actions, but including the Avoidance Action Proceeds. Subject to paragraph 12 below and the other terms of this Final DIP Order, the Prepetition First Lien Adequate Protection Liens shall be (A) with respect to the Prepetition First Lien Collateral, whether now existing or hereafter arising or acquired, subject and subordinate only to the Carve Out, the Permitted Prior Liens and the DIP Liens, (B) with respect to assets that did not constitute Prepetition First Lien Collateral but were subject to Permitted Prior Liens, subject and subordinate only to the Carve Out, the DIP Liens and the Permitted Prior Liens and (C) with respect to Previously Unencumbered Property, subject and subordinate only to the Carve Out and the DIP Liens. The Prepetition First Lien Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (including, for the avoidance of doubt, any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code). Upon the deemed funding of the Roll-Up Loans pursuant to the terms of the Interim DIP Order or this Final DIP Order, as applicable, the Prepetition First Lien Adequate

Protection Liens shall continue to secure the Remaining Prepetition First Lien Secured Obligations.

(c)      Prepetition First Lien Adequate Protection Superpriority Claims. As further adequate protection, to the extent of any First Lien Diminution in Value of the Prepetition First Lien Collateral, and to the fullest extent provided by sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, the Prepetition First Lien Adequate Protection Claims shall be, subject and subordinate to the Carve Out and the DIP Superpriority Claims, allowed superpriority administrative expense claims in each of the Chapter 11 Cases ("Prepetition First Lien Adequate Protection Superpriority Claims"). The Prepetition First Lien Adequate Protection Superpriority Claims shall be payable from and have recourse to all prepetition property and postpetition property of the Debtors excluding Avoidance Actions, but including all Avoidance Actions Proceeds; *provided, however*, that, in the event of an enforcement of remedies in accordance with the terms of this Final DIP Order, the Avoidance Action Proceeds shall only be used to satisfy the Prepetition First Lien Adequate Protection Superpriority Claims in the event that all other sources of recovery are first exhausted and the Prepetition First Lien Adequate Protection Superpriority Claims have not been indefeasibly paid in full.  The Prepetition First Lien Adequate Protection Claims shall be senior to any and all other administrative expense claims in such Chapter 11 Cases now existing or hereafter arising, of any kind or nature whatsoever, including administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code ("Other Administrative Expense Claims") to the extent of any First Lien Diminution in Value and subject to the DIP Superpriority Claims.

(d)     <u>Prepetition First Lien Adequate Protection Payments</u>. As further adequate protection, the Debtors are authorized and directed to pay in cash, in accordance with the terms of paragraph 19 of this Final DIP Order, all reasonable and documented fees and expenses of the Prepetition First Lien Secured Parties, whether incurred before or after the Petition Date, to the extent not duplicative of any fees and/or expenses paid pursuant to paragraph 3(d)(3) hereof, including all reasonable and documented fees and expenses of counsel and other professionals retained as provided for in the DIP Loan Documents and this Final DIP Order, including, for the avoidance of doubt, of (i) Sullivan & Cromwell LLP, as counsel to the Prepetition First Lien Secured Parties, (ii) Potter Anderson & Corroon LLP, as counsel to the Prepetition First Lien Lenders, (iii) Sullivan & Cromwell LLP and Potter Anderson & Corroon LLP, as counsel to the DIP Agent, Prepetition First Lien Term Loan Agent, and (iv) any conflicts counsel or other professionals necessary or advisable to represent the interests of the Prepetition First Lien Lenders (all payments described hereof, the "<u>First Lien Adequate Protection Payments</u>"). None of the First Lien Adequate Protection Payments shall be subject to separate approval by this Court or the U.S. Trustee Guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.

(e)     <u>Right to Seek Additional Adequate Protection</u>. Subject to any further Court order, this Final DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition First Lien Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors, the Committee, or any other party to contest such request. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition

First Lien Secured Parties is insufficient to compensate for any First Lien Diminution in Value of their interests in the Prepetition First Lien Collateral during the Chapter 11 Cases. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition First Lien Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition First Lien Secured Parties against any First Lien Diminution in Value of their respective interests in the Prepetition First Lien Collateral (including the Cash Collateral).

(f)     Other Covenants. The Debtors shall maintain their cash management arrangements in a manner consistent with the Cash Management Order approving the Debtors' cash management motion or any further Court order. The Debtors shall comply with the covenants contained in the DIP Credit Agreement regarding conduct of business, including preservation of rights, qualifications, licenses, permits, privileges, franchises, governmental authorizations, and intellectual property rights material to the conduct of their business and the maintenance of properties and insurance.

(g)     Reporting Requirements. As additional adequate protection to the Prepetition First Lien Secured Parties, the Debtors shall comply with all reporting requirements set forth in the DIP Credit Agreement and shall provide all such reports, documents, and other information to the Prepetition First Lien Term Loan Agent.

(h)     Miscellaneous. Except for the Carve Out and as otherwise provided in paragraph 7, as approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, the Prepetition First Lien Adequate Protection Liens and Prepetition First Lien Adequate Protection Claims granted to the Prepetition First Lien Secured Parties pursuant to this Final DIP Order shall not be subject, junior, or *pari passu*, to any lien or security interest that is

avoided and preserved for the benefit of the Debtors' estates under the Bankruptcy Code, including pursuant to section 551 or otherwise, and shall not be subordinate to or made *pari passu* with any lien, security interest or administrative claim under the Bankruptcy Code, including pursuant to section 364 or otherwise in the Chapter 11 Cases or any Successor Cases, including any subsequently converted Chapter 11 Case of the Debtors to a case under Chapter 7 of the Bankruptcy Code.

10.    <u>Carve Out</u>.

(a)    <u>Priority of Carve Out</u>. Subject to the terms and conditions contained in this paragraph 10, each of the DIP Liens, DIP Superpriority Claims, DIP Obligations, Prepetition First Priority Liens, Prepetition First Lien Secured Obligations, Prepetition First Lien Adequate Protection Liens, and First Lien Adequate Protection Claims shall each be subject to and subordinate to payment of the Carve Out. The Carve Out shall have such priority claims and liens over all assets of the Debtors, including any DIP Collateral and Prepetition First Lien Collateral.

(b)    <u>Definition of Carve Out</u>. As used in this Final DIP Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (and any monthly, restructuring, or sale fees to the extent earned prior to the date of the Carve Out Trigger Notice (as defined below)) (the "<u>Allowed Professional Fees</u>") incurred by (or payable to) persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor</u>

-32-

Professionals") and the Committee pursuant to sections 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before the date of delivery of the Carve Out Trigger Notice by the DIP Agent (at the direction of the Required DIP Lenders) or at the direction of the Prepetition First Lien Secured Parties after repayment of the DIP Obligations, whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,200,000 incurred on or after the date of delivery of the Carve Out Trigger Notice by the DIP Agent (at the direction of the Required DIP Lenders) (or at the direction of the Prepetition First Lien Secured Parties after repayment of the DIP Obligations in full) of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"); and (v) all reasonable fees and expenses up to $100,000 incurred by the fee examiner in these Chapter 11 Cases (without regard to the notice set forth in (iii) above); *provided*, that to the extent any retainer held by such Professional Person as of the Carve Out Trigger Notice is applied or applicable to the Post-Carve Out Trigger Notice Cap, the Post-Carve Out Trigger Notice Cap shall be reduced on a dollar-for-dollar basis by the amount of such applied retainer.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (at the direction of the Required DIP Lenders) (or by the Prepetition First Lien Secured Parties after repayment of the DIP Obligations in full) to the Debtors, their restructuring counsel (Kirkland & Ellis LLP and Pachulski Stang Ziehl & Jones LLP), the U.S. Trustee, the Prepetition First Lien Term Loan Agent, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined in the DIP Credit Agreement or, after

repayment of the DIP Obligations in full, the Prepetition First Lien Credit Agreement) under the Prepetition First Lien Credit Agreement), stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(c)     Professional Fees Account. The Debtors shall, on a weekly basis, transfer cash proceeds of the DIP Facility or cash on hand into a segregated account, (which may be the trust account of the Debtors' counsel), not subject to the control of the DIP Agent, the DIP Lenders, the Prepetition First Lien Lenders, or the Prepetition First Lien Agent (the "Professional Fees Account") in an amount equal to the amount budgeted for Professional Persons in the Approved Budget that are incurred during the preceding week by such Professional Persons; *provided* that the amount in the Professional Fees Account shall not exceed the total amount allocated for Professional Persons in the Approved Budget.  Upon the delivery of the Carve Out Trigger Notice, the Debtors shall deposit all available cash on hand into the Professional Fees Account until such amounts therein equal the Carve Out.  The Professional Fees Account, and all funds held therein, shall be held in trust exclusively for the benefit of the Professional Persons, and shall be available only to satisfy obligations benefitting from the Carve Out, and the DIP Agent and DIP Lenders (i) shall not sweep or foreclose on any such available cash of the Debtors until the Professional Fees Account is fully funded, and (ii) shall have a security interest on any residual interest in the Professional Fees Account available following satisfaction in cash of all Carve Out expenses in subparagraph (b) above, and the priority of such lien shall be consistent with the DIP Liens. Further, notwithstanding anything to the contrary in this Final DIP Order, (i) disbursements by the Debtors from the Professional Fees Account shall not constitute Loans (as defined in the DIP Credit Agreement) or increase or reduce the DIP Obligations, and (ii) the failure of the Professional Fees Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the

-34-

Carve Out, and (iii) in no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Professional Fees Account, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final DIP Order, the DIP Facility, or the Prepetition First Lien Term Loan Facility, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the First Lien Adequate Protection Liens, and the First Lien Adequate Protection Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition First Lien Secured Obligations.

(d)     Carve Out Reserves. On the day on which a Carve Out Trigger Notice is given to the Debtors with a copy to counsel to the Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall (i) be deemed a draw request and notice of borrowing by the Debtors for DIP Loans under the DIP Facility (on a pro rata basis based on the then outstanding DIP New Money Loan Commitments), in an amount equal to the remaining unpaid amount of Allowed Professional Fees (any such amounts actually advanced shall constitute DIP Loans) and (ii) also constitute a demand to the Debtors to utilize all cash on hand, including any amounts in the Professional Fee Account, as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also (i) be deemed a request by the Debtors for DIP Loans under the DIP Facility (on a pro rata basis based on the then outstanding DIP New Money Loan Commitments), in an amount equal to the remaining unfunded Post-Carve Out Trigger Notice Cap

(any such amounts actually advanced shall constitute DIP Loans) and (ii) constitute a demand to the Debtors to utilize all cash on hand, including any amounts in the Professional Fee Account, as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  On the first business day after the DIP Agent gives such notice to such DIP Lenders, notwithstanding anything in the DIP Credit Agreement to the contrary, including with respect to the existence of a Default (as defined in the DIP Credit Agreement) or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for New Money Loans under the DIP Facility, any termination of the New Money Loan Commitments following an Event of Default, or the occurrence of the Maturity Date, each DIP Lender with an outstanding New Money Loan Commitment (on a pro rata basis based on the then outstanding New Money Loan Commitments) shall make available to the DIP Agent such DIP Lender's pro rata share with respect to such borrowing in accordance with the DIP Facility.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition First Lien Secured Parties

in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve

Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the

definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent

the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for

the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in

cash, and all DIP Commitments have been terminated, in which case any such excess shall be paid

to the Prepetition First Lien Secured Parties in accordance with their rights and priorities as of the

Petition Date.  Notwithstanding anything to the contrary in the DIP Loan Documents, or this Final

DIP Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this

paragraph 10, then, any excess funds in one of the Carve Out Reserves following the payment of

the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the

other Carve Out Reserve, up to the applicable amount set forth in this paragraph 10, prior to making

any payments to the DIP Agent (for the benefit of the DIP Lenders) or the Prepetition First Lien

Secured Parties, as applicable.  Notwithstanding anything to the contrary in the DIP Loan

Documents or this Final DIP Order, following delivery of a Carve Out Trigger Notice, the DIP

Agent and the Prepetition First Lien Term Loan Agent shall not sweep or foreclose on cash

(including cash received as a result of the sale or other disposition of any assets) of the Debtors

until the Carve Out Reserves have been fully funded, but shall have a security interest in any

residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application

in accordance with the DIP Loan Documents.  Further, notwithstanding anything to the contrary

in this Final DIP Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not

constitute Loans (as defined in the DIP Credit Agreement) or increase or reduce the DIP

Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional

Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final DIP Order, the DIP Facility, or the Prepetition First Lien Term Loan Facility, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the First Lien Adequate Protection Liens, and the First Lien Adequate Protection Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition First Lien Secured Obligations.

(e)      <u>Payment of Allowed Professional Fees Prior to a Carve Out Trigger Notice</u>. Any payment or reimbursement made prior to the date on which a Carve Out Trigger Notice is delivered in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(f)      <u>No Direct Obligation To Pay Allowed Professional Fees</u>. None of the DIP Agent, the DIP Lenders or the Prepetition First Lien Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases.  Nothing in this Final DIP Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders or the Prepetition First Lien Secured Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.  Further, notwithstanding anything to the contrary, each of the DIP Agent (acting at the direction of the Required DIP Lenders), the DIP Lenders and the Prepetition First Lien Secured Parties shall reserve its right to object to any request for the payment or reimbursement of any fees or disbursement of any Professional Person in the Chapter 11 Cases

-38-

or any Successor Cases; *provided* that any Professional Person reserves all rights and defenses to any such objection or request.

(g)     <u>Payment of Carve Out On or After a Carve Out Trigger Notice</u>. Any payment or reimbursement made on or after the date on which a Carve Out Trigger Notice is delivered in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final DIP Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

11.     <u>Reservation of Rights of the DIP Agent, DIP Lenders, and Prepetition First Lien Secured Parties</u>. Subject only to the Carve Out and Permitted Prior Liens, notwithstanding any other provision in this Final DIP Order or the DIP Loan Documents to the contrary, the entry of this Final DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of any of the Prepetition First Lien Secured Parties to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection at and following the Final Hearing; *provided* that any such further or different adequate protection shall at all times be subordinate and junior to the Carve Out, and the claims and liens of the DIP Secured Parties granted under this Final DIP Order and the DIP Loan Documents; (b) any of the rights of the DIP Secured Parties or the Prepetition First Lien Secured Parties under the DIP Loan Documents, the Prepetition First Lien Term Loan Facility, or the Bankruptcy Code or under non-bankruptcy law (as applicable), including the right of any of the DIP Secured Parties or the Prepetition First Lien Secured Parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal

of any of the Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Cases, (iii) seek to propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Secured Parties and the Prepetition First Lien Secured Parties. The delay in or failure of the DIP Secured Parties and/or the Prepetition First Lien Secured Parties to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Secured Parties' and/or the Prepetition First Lien Secured Parties' rights and remedies.

12.    <u>Reservation of Certain Committee and Third-Party Rights and Bar of Challenges and Claims</u>. Subject to the Challenge Period (as defined herein), the stipulations, admissions, waivers, and releases contained in the Interim DIP Order and this Final DIP Order, including the Debtors' Stipulations, shall be binding upon the Debtors, their estates, and any of their respective successors in all circumstances and for all purposes as of the date of entry of the Interim DIP Order and the Debtors are deemed as of such date to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date. The stipulations, admissions, and waivers contained in the Interim DIP Order and this Final DIP Order, as applicable, including the Debtors' Stipulations, shall be binding upon all other parties in interest as of the date of entry of the Interim DIP Order, including the Committee and any other person acting on behalf of the Debtors' estates, unless and to the extent that a party in interest with proper standing granted by order of the Court, has timely and properly filed an adversary proceeding or contested matter under the Bankruptcy Rules: (i) seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations, including regarding, (a) the validity, enforceability, extent, priority, or perfection of the mortgages, security interests, and liens of the Prepetition First Lien Secured Parties, (b) the validity,

enforceability, allowability, priority, secured status, or amount of the Prepetition First Lien Secured Obligations, and (c) asserting or prosecuting any so-called "lender liability" claims, avoidance actions or any other claim, counter claim, cause of action, objection, contest or defense, of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable law or otherwise, against the Prepetition First Lien Secured Parties or their respective representatives (any such claim, a "Challenge") setting forth the particular basis for such Challenge; and (ii) in which the Court enters a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed Challenge (each, a "Successful Challenge"). A Challenge must be filed on or prior to seventy-five (75) days following entry of the Interim DIP Order (the "Challenge Period" and the date of expiration of the Challenge Period, the "Challenge Period Termination Date"); *provided, however*, that if a chapter 11 trustee is appointed or the Cases are converted to cases under chapter 7 prior to the Challenge Period Termination Date, the chapter 11 or chapter 7 trustee, as applicable, shall have until the later of (1) the Challenge Period Termination Date or (2) the tenth (10th) day after the appointment of the chapter 11 trustee or the conversion of the Cases to cases under chapter 7, as applicable, to commence a Challenge; *provided, further*, that the timely filing of a motion seeking standing to file a Challenge before the expiration of the Challenge Period, which attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge, shall toll the Challenge Period only as to the party that timely filed such standing motion until such standing motion is resolved or adjudicated by the Court and solely as to the Challenges for which standing is sought (as set forth in such motion). To the extent the stipulations, admissions, waivers and releases contained in this Final DIP Order, including the Debtors' Stipulations, are (x) not subject to a Challenge timely and properly commenced prior to the expiration of the Challenge Period Termination Date or (y) subject to a Challenge timely and

properly commenced prior to the expiration of the Challenge Period Termination Date, but such Challenge does not result in a final and nonappealable judgment or order of the Court that is inconsistent with the stipulations, admissions, waivers and releases contained in this Final DIP Order, including the Debtors' Stipulations, then, without further notice, motion, or application to, or order of, or hearing before, this Court and without the need or requirement to file any proof of claim: (a) any and all such Challenges by any party (including the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever barred; (b) the Prepetition First Lien Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Debtors' Chapter 11 Cases and any Successor Cases; (c) the Prepetition First Priority Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected liens and security interests, not subject to recharacterization, subordination, or avoidance; and (d) all of the Debtors' stipulations and admissions contained in the Interim DIP Order and this Final DIP Order, including the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition First Lien Secured Parties' claims, liens, and interests contained in the Interim DIP Order and this Final DIP Order shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates, and all creditors, interest holders, and other parties in interest in these Chapter 11 Cases and any Successor Cases. Furthermore, if any such Challenge is timely and properly filed under the Bankruptcy Rules then (a) any claim or action that is not brought shall forever be barred and (b) the stipulations and admissions contained in the Interim DIP Order and this Final DIP Order, including the Debtors'

Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such Challenge prior to the Challenge Period Termination Date (and solely as to the plaintiff party that timely filed such Challenge and not, for the avoidance of doubt, any other party-in-interest). Nothing in this Final DIP Order vests or confers on any person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including any challenges (including a Challenge) with respect to the Prepetition First Lien Term Loan Facility, the Prepetition First Priority Liens, the Prepetition First Lien Secured Obligations, and a separate order of the Court conferring such standing on the Committee or other party in interest shall be a prerequisite for the prosecution of a Challenge by such Committee or such other party-in-interest; *provided, however*, that nothing herein prohibits the Prepetition First Lien Secured Parties from contesting any request to obtain standing on any other grounds that applicable law permits.

13. <u>Termination Date</u>. On the Termination Date (as defined in the DIP Credit Agreement), consistent with Section 2 of the DIP Credit Agreement, (a) all DIP Obligations shall be immediately due and payable and all New Money Loans will terminate; (b) all authority to use Cash Collateral shall cease; *provided, however*, that during the Remedies Notice Period (as defined below), the Debtors may use the proceeds of the DIP Facility (to the extent drawn prior to the occurrence of an Event of Default) and Cash Collateral solely to fund the Carve Out and pay payroll and other expenses critical to the administration of the Debtors' estates strictly in accordance with the Approved Budget, subject to any Permitted Variance provided for in the DIP Credit Agreement; and (c) the DIP Secured Parties shall be otherwise entitled to exercise rights and remedies under the DIP Loan Documents in accordance with this Final DIP Order.

14.    <u>Events of Default</u>. The occurrence of any of the following events, unless waived by the Required DIP Lenders in accordance with the terms of the DIP Loan Documents, shall constitute an event of default (collectively, the "<u>Events of Default</u>"):  (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Final DIP Order; (b) the failure of the Debtors to comply with any of the Required Milestones (as defined below); or (c) the occurrence of an "Event of Default" under the DIP Credit Agreement, in each case unless waived by the Required DIP Lenders or DIP Agent, as applicable.  The Committee shall receive notice within twenty-four hours of the occurrence of an Event of Default.

15.    <u>Milestones</u>. The Debtors' failure to comply with those certain case milestones referred to in the definition of "Milestones" in the DIP Credit Agreement (collectively, the "<u>Required Milestones</u>") shall constitute an "Event of Default" in accordance with the terms of the DIP Credit Agreement unless waived by the Required DIP Lenders in accordance with the terms of the DIP Loan Documents.

16.    <u>Rights and Remedies Upon Event of Default</u>.  Upon the occurrence and during the continuation of an Event of Default or other applicable Termination Date (as defined in the DIP Credit Agreement), unless such Event of Default or Termination Date has been waived by the DIP Agent (as directed by the Required DIP Lenders) or the Required DIP Lenders, as applicable, and following the giving of not less than five (5) business days' (the "<u>Remedies Notice Period</u>") advance written notice by counsel for the Debtors or the applicable DIP Secured Party, as applicable, which may be by email (the "<u>Enforcement Notice</u>"), to counsel to the Debtors, counsel to the DIP Secured Parties, the U.S. Trustee, and counsel to the Committee (the "<u>Remedies Notice Parties</u>"), without any application, motion, or notice to, hearing before, or order from, the Court, subject to the terms of this Final DIP Order and the Remedies Notice Period, (a) the DIP Agent (at

-44-

the direction of the Required DIP Lenders) may send a Carve Out Trigger Notice to the parties set forth in Paragraph 10(b) declaring (i) all DIP Obligations owing under the DIP Loan Documents to be immediately accelerated and due and payable for all purposes, rights, and remedies, without presentment, demand, protest or other notice of any kind, all of which are expressly waived by the Debtors, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Loan Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens, DIP Superpriority Claims or the DIP Obligations, (iv) the Carve Out shall be triggered, (v) the DIP Lenders shall be paid the Termination Payment as provided in the DIP Loan Documents, and (vi) interest under the DIP Facility shall accrue at the default rate, as provided in the DIP Loan Documents, and (b) subject to paragraph 13(b), the Prepetition First Lien Term Loan Agent (at the direction of the applicable required lenders) may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral. The automatic stay in the Chapter 11 Cases otherwise applicable to the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties is hereby modified so that, upon expiration of the Remedies Notice Period: (a) the DIP Agent (at the direction of the Required DIP Lenders) shall be entitled to exercise its rights and remedies in accordance with the DIP Loan Documents and this Final DIP Order to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve Out; and (b) subject to the foregoing clause (a) and solely following (x) the Challenge Period Termination Date, as may be extended or tolled pursuant to paragraph 12 hereof, having passed or (y) if a Challenge is timely and properly commenced prior to the Challenge Period Termination Date, a final and nonappealable judgment or order of the Court on the Challenge having been entered, the applicable Prepetition First Lien Secured Parties shall be

entitled to exercise their respective rights and remedies to the extent available in accordance with the Prepetition First Lien Term Loan Facility and this Final DIP Order with respect to the Debtors' use of Cash Collateral; *provided* that the Debtors shall be entitled to continue to use Cash Collateral to fund the Carve Out and in accordance with the terms of this Final DIP Order during any Remedies Notice Period only to make payroll and fund critical expenses necessary to preserve the Prepetition Collateral, in each case in accordance with the terms of the Approved Budget and this Final DIP Order.  During the Remedies Notice Period, the Debtors shall be entitled to seek an emergency hearing with the Court with respect to the Enforcement Notice and whether an Event of Default has occurred; *provided, however*, that nothing herein limits the Court's ability to hear other matters it deems appropriate at such hearing; *provided*, *further*, *however*, that nothing in this Final DIP Order shall prejudice the rights of the Debtors to seek non-consensual use of Cash Collateral.  Upon Court order prior to the expiration of the Remedies Notice Period, the automatic stay, as to all of the DIP Agent, DIP Lenders, and Prepetition First Lien Secured Parties, shall be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, unless otherwise ordered by the Court, the DIP Agent (at the direction of the Required DIP Lenders) and the Prepetition First Lien Secured Parties (subject to this Final DIP Order and solely following (x) the Challenge Period Termination Date, as may be extended or tolled pursuant to paragraph 12 hereof, having passed or (y) if a Challenge is timely and properly commenced prior to the Challenge Period Termination Date, a final and nonappealable judgment or order of the Court on the Challenge having been entered), shall be permitted to exercise all remedies set forth herein, in the DIP Loan Documents and the Prepetition First Lien Loan Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Final DIP Order.  Upon expiration of the

Remedies Notice Period, absent further order of the Court, the Debtors shall waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent, the DIP Lenders, or the Prepetition First Lien Secured Parties under this Final DIP Order.

17.    <u>Limitation on Charging Expenses Against Collateral</u>. No expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from (a) the DIP Collateral (except to the extent of the Carve Out), the DIP Agent, or the DIP Lenders or (b) the Prepetition Collateral (except to the extent of the Carve Out) or the Prepetition First Lien Secured Parties, in each case, pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, or the Prepetition First Lien Secured Parties.

18.    <u>Use of Cash Collateral</u>. The Debtors are hereby authorized to use all Cash Collateral of the Prepetition First Lien Secured Parties, but solely for the purposes set forth in this Final DIP Order and in accordance with the Approved Budget (subject to Permitted Variances as set forth in this Final DIP Order and the DIP Loan Documents) including to make payments on account of the Prepetition First Lien Adequate Protection Obligations provided for in this Final DIP Order, from the date of this Final DIP Order through and including the date of termination of the DIP Credit Agreement.

19.    <u>Expenses and Indemnification</u>.

(a)    As approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, the Debtors are hereby authorized to pay, in accordance with this Final DIP Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Loan Documents as such amounts become due and without need to obtain further Court approval, including closing, arrangement or commitment payments (including all payments and other amounts owed to the DIP Lenders), administrative agent's fees and collateral agent's fees (including all fees and other amounts owed to the DIP Agent), the reasonable and documented fees and disbursements of counsel and other professionals to the extent set forth in paragraphs 3(d)(3) and 9(d) of this Final DIP Order, whether or not such fees arose before or after the Petition Date, all to the extent provided in this Final DIP Order or the DIP Loan Documents.  Notwithstanding the foregoing, the Debtors were authorized pursuant to the Interim DIP Order to pay on the Closing Date (as defined in the DIP Loan Documents) all reasonable and documented fees, costs, and expenses, including the fees and expenses of counsel to the DIP Lenders, the DIP Agent, the Prepetition First Lien Term Loan Agent, and the Prepetition First Lien Lenders, incurred on or prior to such date without the need for any professional engaged by the DIP Lenders, the DIP Agent, the Prepetition First Lien Term Loan Agent, or the Prepetition First Lien Lenders to be subject to the procedures set forth in paragraph 19(b).

(b)    As approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, the Debtors shall be jointly and severally obligated to pay all fees and expenses described above, which obligations owed to the DIP Secured Parties shall constitute DIP Obligations. The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of professionals to the extent provided for in paragraphs 3(d)(3) and 9(d) of this

Final DIP Order (collectively, the "<u>Lender Professionals</u>" and each, a "<u>Lender Professional</u>") no later than the Closing of the DIP Loan Documents (the "<u>Invoiced Fees</u>") and without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines, including such amounts arising before the Petition Date. Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Chapter 11 Cases, and such invoice summary shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law.

(c)     The Lender Professionals shall deliver the Invoiced Fees for payment to the Debtors, the U.S. Trustee, and counsel to the Committee and such parties shall have ten (10) days following notice to object to any payment (the "<u>Review Period</u>").  The Debtors, the Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "<u>Disputed Invoiced Fees</u>") if, within the Review Period, a Debtor, the Committee, or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten (10) days' prior written notice to the submitting party of any hearing on such motion or other pleading). Any hearing to consider such an objection to the payment of any fees, costs, or

expenses set forth in a professional fee invoice hereunder shall be limited to the reasonableness of the fees, costs and expenses that are the subject of the objection. For the avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees following the Review Period.

(d)     In addition, the Debtors hereby indemnify each of the DIP Lenders, the DIP Agent, the Prepetition First Lien Term Loan Agent (with respect to a Challenge), and each of their respective affiliates, successors, and assigns and the officers, directors, employees, agents, attorneys, advisors, controlling persons, and members of each of the foregoing (each, an "Indemnified Person") and hold them harmless from and against all costs, expenses (including reasonable and documented legal fees and expenses), and liabilities arising out of or relating to the transactions contemplated hereby and any actual or proposed use of the proceeds of any loans made under the DIP Facility as and to the extent provided in the DIP Credit Agreement or the Prepetition First Lien Term Loan Facility; *provided* that no such person will be indemnified for costs, expenses, or liabilities to the extent such Liabilities or related expenses are determined by a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from the actual fraud, gross negligence, or willful misconduct of such Indemnified Person. No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions contemplated hereby, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's actual fraud, gross negligence, or willful misconduct. In no event shall any Indemnified Person or any Debtor be liable on any theory of liability for any special, indirect,

-50-

consequential, or punitive damages; *provided* that this shall not affect the Debtor's indemnification obligations pursuant to the immediately preceding sentence.

20.     <u>No Third-Party Rights</u>. Except as explicitly provided for herein, this Final DIP Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

21.     <u>Section 507(b) Reservation</u>. Subject only to the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition First Lien Secured Parties is insufficient to compensate for any First Lien Diminution in Value of their interests in Collateral, respectively, during the Chapter 11 Cases or in any Successor Cases.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition First Lien Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition First Lien Secured Parties, respectively, against any First Lien Diminution in Value, as applicable, of their respective interests in the Collateral (including the Cash Collateral).

22.     <u>Insurance</u>.  Until the DIP Obligations have been indefeasibly paid in full, at all times the Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date and shall the DIP Agent shall be deemed a loss payee or additional insured, as applicable, thereunder.

23.     <u>No Waiver for Failure to Seek Relief</u>. The failure or delay of the DIP Agent or the DIP Lenders to exercise rights and remedies under this Final DIP Order, the DIP Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

24.     <u>Perfection of the DIP Liens and Prepetition First Lien Adequate Protection Liens</u>.

(a)     Without in any way limiting the automatically effective perfection of the DIP Liens granted pursuant to the Interim DIP Order and paragraph 8 hereof and the Prepetition First Lien Adequate Protection Liens granted pursuant to the Interim DIP Order and paragraph 9 hereof, the DIP Agent and the Prepetition First Lien Term Loan Agent, as approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder.  Whether the DIP Agent or the Prepetition First Lien Term Loan Agent shall (at the direction of the applicable required lenders) choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not, subject to the Challenge Period, subject to challenge, dispute, or subordination as of the Closing Date with respect to perfection relating to any DIP Obligations and the date of entry of the Interim DIP Order with respect to perfection relation to any Prepetition First Lien Adequate Protection Obligations. If the DIP Agent or the Prepetition First Lien Term Loan Agent, (at the direction of the applicable required lenders) determines to file or execute any financing statements, agreements, notice of liens, or similar instruments (which, in each case, shall be at the sole cost and expense of the Debtors), the Debtors shall cooperate and assist in any such execution and/or filings as reasonably requested by the DIP Agent or Prepetition First Lien Term Loan Agent (at the direction of the applicable required lenders), and the automatic stay shall be modified solely to allow such filings as provided for in the Interim DIP Order and this Final DIP Order.

(b)    A certified copy of this Final DIP Order may, at the direction of the applicable Required DIP Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final DIP Order for filing and recording; *provided, however*, that notwithstanding the date of any such filing, the date of such perfection shall be the Closing Date with respect to any DIP Obligation and the date of entry of the Interim Dip Order with respect to perfection relating to any Prepetition First Lien Adequate Protection Obligations.

(c)    Effective as of the Petition Date, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords, lessors, or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto, shall be deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, subject to applicable law, and any such provision shall have no force and effect with respect to the granting of the DIP Liens and the Prepetition First Lien Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the DIP Credit Agreement or applicable law.

25.    <u>Release</u>.  Each of the Debtors and the Debtors' estates, each on its own behalf and on behalf of each of their successors, and assigns, shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully and forever release, remise, acquit, relinquish, irrevocably waive, and discharge, effective upon entry of this Final DIP Order, each of the DIP Secured Parties (solely in their capacities as DIP Secured Parties) and each of their

respective affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, and predecessors in interest, each in their capacity as such (collectively, the "Related Parties"), and subject to the rights and limitations set forth in paragraph 12 of this Final DIP Order, each of the Prepetition First Lien Secured Parties and each of their respective Related Parties, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof with respect to or relating to the DIP Obligations, the DIP Liens, the DIP Loan Documents, the Prepetition First Lien Secured Obligations, the Prepetition First Priority Liens or the Prepetition First Lien Term Loan Facility, as applicable, including: (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties, and the Prepetition First Lien Secured Parties; *provided* that nothing in this paragraph shall in any way limit or release the obligations of any DIP Secured Party under the DIP Loan Documents, this Final DIP Order; *provided, further*, that the release described in subclause (iii) of this paragraph with respect to any Prepetition First Lien Secured Obligations that have been

rolled up shall be subject to the rights and limitations set forth in paragraph 12 of this Final DIP Order.

26.  <u>Credit Bidding</u>. The DIP Agent (at the direction of the Required DIP Lenders) and the Prepetition First Lien Term Loan Agent (at the direction of the applicable required lenders) (as to the Prepetition First Lien Term Loan Agent, subject to the preservation of rights provided in paragraph 12) shall each have the unqualified right to credit bid (either directly or through one or more acquisition vehicles), up to the full amount of the underlying lenders' respective claims, including, for the avoidance of doubt, in the case of the DIP Agent, the Roll-Up Loans, in the case of the Prepetition First Lien Term Loan Agent, the First Lien Adequate Protection Claims, if any, in any sale of all or any portion of the Prepetition Collateral or the DIP Collateral, including sales occurring pursuant to section 363(k) of the Bankruptcy Code (including any sale contemplated under the Bidding Procedures Order (as defined in the DIP Credit Agreement)) or included as part of any chapter 11 plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii)-(iii).  In the event that a Credit Bid is selected as the Successful Bid, any proceeds from the Sale Transaction to such Successful Bidder intended to be applied to pay down any portion of the Roll-Up Loans or the Remaining Prepetition First Lien Secured Obligations shall be held by the Debtors' estates and not applied to pay down any portion of the Roll-Up Loans or the Remaining Prepetition First Lien Secured Obligations pending (a) the Challenge Period Termination Date, as may be extended or tolled pursuant to paragraph 12 hereof or (b) if a Challenge is timely and properly commenced prior to the Challenge Period Termination Date, a final and nonappealable judgment or order of the Court on the Challenge is entered.[6]

---

[6]  Capitalized terms used in this sentence and not otherwise defined in this Final DIP Order shall have the meanings ascribed to such terms in the *Order (A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets; (B) Approving Procedures for the Assumption and Assignment of Executory Contracts*

27.    <u>Preservation of Rights Granted Under this Final DIP Order</u>.

(a)    Subject to the Carve Out and paragraph 16 of this Final DIP Order, unless and until all DIP Obligations are indefeasibly paid in full, in cash, all New Money Loan Commitments are terminated and the Prepetition First Lien Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition First Lien Term Loan Facility or this Final DIP Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral; and (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral, except as set forth in paragraph 24 herein.

(b)    In the event this Final DIP Order or any provision hereof is reversed or modified on appeal, any liens or claims granted to the DIP Secured Parties or the respective Prepetition First Lien Secured Parties hereunder arising prior to the effective date of any such reversal or modification of this Final DIP Order shall be governed in all respects by the original provisions of this Final DIP Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the respective Prepetition First Lien Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits afforded in section 364(e) of the Bankruptcy Code.

(c)    Subject to the Carve Out, unless and until all DIP Obligations, Prepetition First Lien Secured Obligations, and the Prepetition First Lien Adequate Protection Obligations are indefeasibly paid in full, in cash, and all New Money Loan Commitments are terminated, it shall

*and Unexpired Leases; (C) Approving Certain Bid Protections in Connection with the Debtors' Entry into Any Potential Stalking Horse Agreement; (D) Scheduling the Auction and Sale Hearing; (E) Approving the Form and Manner of Notice Thereof; and (F) Granting Related Relief* [Docket No. 123].

be an Event of Default if any of the Debtors seek or consent to, directly or indirectly (i) except as permitted under the DIP Loan Documents or, if not provided for therein, with the prior written consent of the DIP Agent, the Required DIP Lenders, and the Prepetition First Lien Loan Agent (acting at the direction of the applicable required lenders), (x) any modification, stay, vacatur, or amendment of this Final DIP Order, (y) a priority claim for any administrative expense or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases, *pari passu* with or senior to the DIP Superpriority Claims, the Prepetition First Lien Adequate Protection Superpriority Claims, or the Prepetition First Lien Secured Obligations, or (z) any other order allowing use of the DIP Collateral, or the Prepetition Collateral; (ii) any lien on any of the DIP Collateral or Prepetition Collateral with priority equal or superior to the DIP Liens, the Prepetition First Lien Adequate Protection Liens or the Prepetition First Priority Liens, as applicable; (iii) the use of Cash Collateral for any purpose other than as permitted in the DIP Loan Documents and this Final DIP Order (including the Carve Out); (iv) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor; (v) an order converting or dismissing any of the Chapter 11 Cases; (vi) an order appointing a chapter 11 trustee in any of the Chapter 11 Cases; or (vii) an order appointing an examiner with enlarged powers in any of the Chapter 11 Cases.

(d)     Notwithstanding any order dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases to a case under chapter 7 entered at any time, (x) the DIP Liens, the DIP Superpriority Claims, the Prepetition First Lien Adequate Protection Liens, the First Lien Adequate Protection Claims, and the other administrative claims granted pursuant to this

Final DIP Order shall continue in full force and effect and shall maintain their priorities as provided in this Final DIP Order until all DIP Obligations are indefeasibly paid in full in cash (otherwise satisfied in a manner agreed to by the Required DIP Lenders and the DIP Agent (acting at the direction of the Required DIP Lenders)) and all First Lien Adequate Protection Payments are indefeasibly paid in full in cash (and such DIP Liens, DIP Superpriority Claims, Prepetition First Lien Adequate Protection Liens, First Lien Adequate Protection Claims, and the other administrative claims granted pursuant to this Final DIP Order, shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) to the fullest extent permitted by law the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

(e)     Except as expressly provided in this Final DIP Order or in the DIP Loan Documents, the DIP Liens, the DIP Superpriority Claims, the Prepetition First Lien Adequate Protection Liens, the First Lien Adequate Protection Claims, and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties granted by the provisions of this Final DIP Order and the DIP Loan Documents shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases or any Successor Cases terminating the joint administration of these Chapter 11 Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Prepetition Collateral or DIP Collateral pursuant to section 363(b) of the Bankruptcy Code, or (iii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, any remaining DIP Obligations or Prepetition First Lien Adequate Protection Obligations. The terms and provisions of this Final DIP Order and the DIP Loan Documents shall continue and be

binding in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code. The DIP Liens, the DIP Superpriority Claims, the Prepetition First Lien Adequate Protection Liens, the First Lien Adequate Protection Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition First Lien Secured Parties granted by the provisions of this Final DIP Order shall continue in full force and effect until the DIP Obligations and the respective First Lien Adequate Protection Payments are indefeasibly paid in full, in cash (or, with respect to the DIP Obligations, otherwise satisfied in a manner agreed to by the Required DIP Lenders and the DIP Agent (acting at the direction of the Required DIP Lenders)).

(f)    Other than as set forth in this Final DIP Order, subject and subordinate to the Carve-Out, none of the DIP Liens or Prepetition First Lien Adequate Protection shall be made subject to or *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases or arising after the Petition Date, and none of the DIP Liens, or the Prepetition First Lien Adequate Protection Liens shall be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

28.    <u>Limitation on Use of DIP Facility Proceeds, DIP Collateral, and Cash Collateral</u>. Except as provided in this Final DIP Order, as approved upon entry of the Interim DIP Order and pursuant to this Final DIP Order on a final basis, none of the DIP Facility, the DIP Collateral, the Prepetition Collateral (including Cash Collateral), or the Carve Out or proceeds thereof may be used: (a) to investigate (including by way of examinations or discovery proceedings), analyze, initiate, assert, prosecute, join, commence, threaten, support, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other litigation of any type (i) against any of the DIP

Secured Parties or the Prepetition First Lien Secured Parties (each in their capacities as such), and each of their respective affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial advisors, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including any so-called "lender liability" claims and causes of action, or seeking relief that would impair the rights and remedies of the DIP Secured Parties or the Prepetition First Lien Secured Parties (each in their capacities as such) under the DIP Loan Documents, the Prepetition First Lien Term Loan Facility, or this Final DIP Order, including for the payment of any services rendered by the professionals retained by the Debtors or any Committee appointed in these Chapter 11 Cases in connection with the assertion of or joinder in any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the DIP Secured Parties or the Prepetition First Lien Secured Parties to recover on the DIP Collateral, the Prepetition Collateral, or seeking affirmative relief against any of the DIP Secured Parties or the Prepetition First Lien Secured Parties related to the DIP Obligations or the Prepetition First Lien Secured Obligations; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the DIP Obligations or the Prepetition First Lien Secured Obligations, or the DIP Agent's, the DIP Lenders', or the Prepetition First Lien Secured Parties' liens or security interests in the DIP Collateral, or Prepetition Collateral, as applicable; or (iii) for monetary, injunctive, or other affirmative relief against the DIP Secured Parties or the Prepetition First Lien Secured Parties, or the DIP Agent's, the DIP Lenders', or the Prepetition First Lien Secured Parties' respective liens on or security interests in the DIP

Collateral, or the Prepetition Collateral that would impair the ability of any of the DIP Secured Parties or the Prepetition First Lien Secured Parties, as applicable, to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations or the Prepetition First Lien Secured Obligations, to the extent applicable; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition First Priority Liens) held by or on behalf of each of the Prepetition First Lien Secured Parties related to the Prepetition First Lien Secured Obligations, respectively, or by or on behalf of the DIP Agent and the DIP Lenders related to the DIP Obligations; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including any Avoidance Actions related to the DIP Obligations, the DIP Liens, the Prepetition First Lien Secured Obligations, the Prepetition First Priority Liens; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of: (x) any of the DIP Liens or any other rights or interests of the DIP Agent or the DIP Lenders related to the DIP Obligations or the DIP Liens or (y) any of the Prepetition First Priority Liens or any other rights or interests of any of the Prepetition First Lien Secured Parties related to the Prepetition First Lien Secured Obligations or the Prepetition First Priority Liens; *provided* that no more than $75,000 of the proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, including the Cash Collateral, may be used by the Committee appointed in these Chapter 11 Cases during the Challenge Period solely to investigate, but not object to, challenge, prosecute, or litigate (including by way of formal discovery) the validity, enforceability, perfection, priority, or extent of the Prepetition First Priority Liens or any potential Challenge against the Prepetition First Lien Secured Parties. For the avoidance of doubt, nothing in this paragraph 28 shall prohibit the Debtors from responding to, objecting to, or complying with

discovery requests by the Committee, in whatever form, made in connection with any such investigation, the payment of any professional fees related thereto, or from contesting or challenging whether an Event of Default or Termination Date, as applicable, has in fact occurred, from the proceeds of the DIP Loans.

29.     Conditions Precedent. No DIP Lender shall have any obligation to make any DIP Loan under the respective DIP Loan Documents unless all of the conditions precedent to the making of such extensions of credit under the applicable DIP Loan Documents have been satisfied in full or waived in accordance with such DIP Loan Documents.

30.     Use of DIP Facility Proceeds.  From and after the Petition Date, the Debtors shall be permitted to use advances of credit under the DIP Facility only for the purposes specifically set forth in this Final DIP Order, and the DIP Loan Documents, and only in compliance with the Approved Budget (subject to the Permitted Variances) and the terms and conditions in this Final DIP Order and the DIP Loan Documents.

31.     No Monitoring Obligation.  Unless explicitly set forth in this Final DIP Order, neither the DIP Agent nor DIP Lenders shall have any obligation or responsibility to monitor any Debtor's use of the DIP Facility, and the DIP Agent and DIP Lenders may rely upon each Debtor's representations that the use of the DIP Facility at any time is in accordance with the requirements of the DIP Orders and the DIP Loan Documents, including but not limited to the Approved Budget.

32.     Repayment of DIP Superpriority Claims.   Subject to the Carve Out, notwithstanding anything to the contrary herein or in the other DIP Loan Documents, the Debtors shall indefeasibly pay to each holder of a DIP Superpriority Claim cash equal to the full amount of such DIP Superpriority Claim on the effective date of a chapter 11 plan, unless such holder of a DIP Superpriority Claim consents to a different treatment with respect to such DIP Superpriority

Claim.  The requirements set forth in this paragraph 32 may not be amended without the prior written consent of each holder of a DIP Superpriority Claim adversely affected thereby.

33.    <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Case, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations (other than unasserted contingent obligations that expressly survive termination of the DIP Loan Documents) and the termination of the DIP Lenders' obligations to extend credit under the DIP Facility, then, after satisfaction of the Carve Out, and unless otherwise agreed by the DIP Secured Parties, all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Secured Parties to be distributed in accordance with this Final DIP Order and the DIP Loan Documents, with the remainder (if any) to be used at the Debtors' discretion to fund operations and/or administrative expenses.

34.    <u>Payments Held in Trust</u>.  Other than with respect to the Carve Out and except as expressly permitted in this Final DIP Order or the DIP Loan Documents, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral or receives any DIP Collateral or any proceeds of DIP Collateral prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Loan Documents, and termination of the DIP Facility in accordance with the DIP Credit Agreement, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral and shall immediately turn over such proceeds to the DIP Secured Parties, for application in accordance with the DIP Credit Agreement and this Final DIP Order, with the remainder (if any) to be used at the Debtors' discretion to fund operations and/or administrative expenses.

35.    Binding Effect; Successors and Assigns. The DIP Loan Documents and the provisions of this Final DIP Order, including all findings herein, upon entry of the Interim DIP Order and the Closing Date, as applicable, were, and upon entry of the Final DIP Order, shall be binding upon all parties in interest in these Chapter 11 Cases, including the DIP Secured Parties, the Prepetition First Lien Secured Parties, the Committee, and the Debtors and their respective successors and permitted assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors in the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case) to the extent permitted by applicable law and shall inure to the benefit of the DIP Secured Parties and the applicable Prepetition First Lien Secured Parties; *provided* that, except to the extent expressly set forth in this Final DIP Order, the Prepetition First Lien Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

36.    Limitation of Liability. In determining to make any loan under the DIP Loan Documents or permitting the use of Cash Collateral the DIP Secured Parties and the Prepetition First Lien Secured Parties shall not, solely by reason thereof, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Final DIP Order or in the DIP Loan Documents shall in any way be construed or interpreted to impose

-64-

or allow the imposition upon the DIP Agent, the DIP Lenders, or any Prepetition First Lien Secured Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors.

37.    <u>No Requirement to File Claim for DIP Obligations</u>. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, neither the DIP Agent nor any DIP Lender shall be required to file any proof of claim or request for payment of administrative expenses in the Chapter 11 Case or any Successor Cases with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Loan Documents without the necessity of filing any such proof of claim or request for payment of administrative expenses, and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the DIP Loan Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the DIP Agent's or any DIP Lender's rights, remedies, powers, or privileges under any of the DIP Loan Documents, this Final DIP Order, or applicable law. Notwithstanding the foregoing, each of the DIP Agent or the DIP Lenders may, in its sole discretion, but is not required to, file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in the Chapter 11 Case for any claim allowed herein. The provisions set forth in this paragraph are solely intended for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

38.    <u>No Requirement to File Claim for Prepetition First Lien Secured Obligations</u>. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court,

including any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses in the Chapter 11 Cases or any Successor Cases under section 503(b) of the Bankruptcy Code, neither the Prepetition First Lien Term Loan Agent nor any other Prepetition First Lien Secured Party shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the Prepetition First Lien Secured Obligations; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of the Prepetition First Lien Term Loan Facility or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the Prepetition First Lien Term Loan Agent's or any other Prepetition First Lien Secured Party's rights, remedies, powers, or privileges under the Prepetition First Lien Term Loan Facility, this Final DIP Order, or applicable law. Notwithstanding the foregoing, each of the Prepetition First Lien Secured Parties may, in its sole discretion, but is not required to, file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in the Chapter 11 Case for any claim allowed herein. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

39.    No Marshaling. Except as otherwise provided herein, the DIP Agent and the DIP Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and proceeds of the DIP Collateral shall be received and applied pursuant to the Final DIP Order, the DIP Loan Documents, and the Prepetition First Lien Term Loan Facility, notwithstanding any other agreement or provision to the contrary, the Prepetition First Lien Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition First Lien

Collateral and proceeds of the Prepetition First Lien Collateral shall be received and applied pursuant to this Final DIP Order, the DIP Loan Documents and, the Prepetition First Lien Term Loan Facility, notwithstanding any other agreement or provision to the contrary.

40.     <u>Application of Proceeds of DIP Collateral</u>. The DIP Obligations, at the option of the Required DIP Lenders, to be exercised in their sole and absolute discretion, shall be repaid (a) first, from the DIP Collateral comprising Previously Unencumbered Property and (b) second, from all other DIP Collateral.

41.     <u>Equities of the Case</u>. The Prepetition First Lien Secured Parties shall be entitled to all the rights and benefits of section 552(b) of the Bankruptcy Code and the Prepetition First Lien Secured Parties have negotiated for, and the Debtors believe the Prepetition First Lien Secured Parties are entitled to a waiver of the "equities of the case" exception under section 552(b) of the Bankruptcy Code, which shall not apply to the Prepetition First Lien Secured Parties with respect to proceeds, product, offspring, or profits of any of the DIP Collateral (including the Prepetition Collateral).

42.     <u>Amendment</u>.  Any amendments, waivers, consents, or other modifications to and under the DIP Loan Documents or the DIP Obligations that shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder to the DIP Loan Documents must be set forth in writing, signed by, or on behalf of, the Debtors and the DIP Agent (acting at the direction of the Required DIP Lenders), with prior written notice to counsel to the Committee, and approved by the Court on seven (7) days' notice to parties in interest to be effective.

43.     <u>Necessary Actions</u>. The Debtors are authorized and directed, on a final basis, to take any and all such necessary actions as are reasonable and appropriate to implement the terms of this Final DIP Order.

44.     <u>Effect of this Final DIP Order</u>. This Final DIP Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

45.     The requirements of Bankruptcy Rule 6004(a) are waived, or are inapplicable due to Bankruptcy Rules 4001(b)(2) and (c)(2).

46.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final DIP Order shall be immediately effective and enforceable upon entry of this Final DIP Order.

47.     <u>Headings</u>. All paragraph headings used in this Final DIP Order are for ease of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

48.     <u>Retention of Jurisdiction</u>. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Final DIP Order.

**Dated: March 11th, 2024**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**