## <u>Exhibit A-1</u>

### Revised Tiger Sale Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| _____ | ) | Chapter 11 |
| In re: | ) | |
| | ) | Case No. 24-10245 (JTD) |
| SIENTRA, INC., *et al.*,[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____) | | Related to Docket Nos. 20, 123, 149, 175, 224, 225, 242 |

**ORDER PURSUANT TO SECTIONS 105(a), 363, AND 365 OF THE BANKRUPTCY
CODE AND RULES 2002, 6004 AND 6006 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE: (I) APPROVING THE TERMS OF THE ASSET
PURCHASE AGREEMENT AND RELATED AGREEMENTS BY AND BETWEEN THE
DEBTORS AND TIGER AESTHETICS MEDICAL, LLC; (II) AUTHORIZING
CONSUMMATION OF THE SALE TRANSACTION CONTEMPLATED THEREIN;
(III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED
GENERAL CONTRACTS; AND (IV) GRANTING RELATED RELIEF**

Upon the motion, dated February 13, 2024 (the "Sale Motion"), of the above-captioned

debtors (collectively, the "Debtors" or "Sellers"), for entry of an order pursuant to sections 105(a),

363, 365, 503, 507, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"),

Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure

of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to establish

certain bidding procedures and approve the sale of substantially all of the Debtors' assets

[Docket No. 20], all as more fully set forth in the Sale Motion; and upon consideration of the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Sientra, Inc. (1000); Mist Holdings, Inc. (4221); Mist, Inc. (1202); and Mist International, Inc. (3363). The Debtors' service address is 3333 Michelson Drive, Suite 650, Irvine, CA 92612.

DE:4870-2981-2662.1 79023.00001

declarations and other evidence submitted in support thereof; and this Court having entered an

order on March 5, 2024 [Docket No. 123] (the "Bidding Procedures Order")[2] approving, among

other things, the Bid Procedures; and notice of the Auction having been provided, and the Auction

having been conducted, in accordance with the Bidding Procedures Order; and Sellers, after

consultation with counsel for the Official Committee of Unsecured Creditors appointed in the

Debtors' chapter 11 cases (the "Committee"), counsel for the DIP Secured Parties, and counsel for

the Prepetition Secured Parties (as that term is defined in the Bidding Procedures), having

determined that Tiger Aesthetics Medical, LLC ("Buyer") has submitted the highest and best bid

for the Sale Property[3] and the Assigned General Contracts (each such term is defined as set forth

in that certain Asset Purchase Agreement (the "Purchase Agreement ") between Seller and Buyer,

dated April 4, 2024, which Purchase Agreement is attached hereto as **Exhibit A** and all initially

capitalized terms used in this Sale Order that are not otherwise defined shall have the meaning set

forth in the Purchase Agreement, or the Bidding Procedures Order, as applicable); and a hearing

having been held on April 10, 2024 (the "Sale Hearing") to consider approval of the sale of the

Sale Property to Buyer (as well as the assumption by Buyer of the Assigned General Contracts

subject to the Cure Cap) pursuant to the terms and conditions of the Purchase Agreement; and

adequate and sufficient notice of the Sale Motion, the Bid Procedures, the Sale Hearing, the

Purchase Agreement, the Transaction, and all transactions contemplated therein or in connection

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement or the Bidding Procedures Order, as applicable.

[3]   For the avoidance of doubt, the Sale Property does not include the Biocorneum Assets, which are Excluded Assets.

DE:4870-2981-2662.1 79023.00001                    2

therewith, the proposed assumption and assignment of the Assigned General Contracts, and this Sale Order having been given to all parties in interest in these cases, including, without limitation, Sale Notice Parties; Contract Counterparties; and to such entities and other relevant parties in interest; and all such parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief requested therein; and the Court having reviewed and considered: (i) the Sale Motion; (ii) the limited objections thereto; (iii) the *Declaration of Ron Menezes in Support of the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 3]; (iv) the *Declaration of Vladimir Moshinsky of Miller Buckfire in Support of (A) Motion of Debtors for Entry of Interim and Final DIP Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing the Use of Cash Collateral; (IV) Granting Adequate Protection to Prepetition First Lien Secured Parties; (V) Modifying the Automatic Stay; (VI) Scheduling Final Hearing; and (VII) Granting Related Relief and (B) Motion for (I) An Order (A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets; (B) Approving Certain Bid Protections in Connection with the Debtors' Entry Into Any Potential Stalking Horse Agreement; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II) An Order (A) Approving the Sale of the Debtors' Assets Free and Clear of All Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 17]; (v) the *Supplemental Declaration of Ron Menezes in Support of Motion for an Order (A) Approving the Sale of the Debtors' Assets Free and Clear of all Encumbrances and*

*(B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 246]; (vi) the *Supplemental Declaration of Vladimir Moshinsky of Miller Buckfire in Support of Motion for an Order (A) Approving the Sale of the Debtors' Assets Free and Clear of all Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 248]; (vii) the *Declaration of Larry R. Wood, Jr., Chief Legal Officer of Tiger Medical Holdings, LLC d/b/a Tiger BioSciences, LLC and Authorized Representative of Buyer, Tiger Aesthetics Medical, LLC, in Support of Sale Motion and Transaction Between Debtors and Tiger Buyer* [Docket No. 245]; (viii) the *Amended Declaration of Larry R. Wood, Jr., Chief Legal Officer of Tiger Medical Holdings, LLC, d/b/a Tiger BioSciences, LLC and Authorized Representative of Buyer, Tiger Aesthetics Medical, LLC in Support of Sale Motion and Transaction Between Debtors and Tiger Buyer* [Docket No. 268]; and (ix) the arguments of counsel made, the relevant consents offered by Parties on the record, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation thereon; and good and sufficient cause appearing therefor, it hereby is

   FOUND AND DETERMINED THAT:[4]

---

[4]   The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  Furthermore, any findings of fact or conclusions of law made by the Court on the record at the close of the Hearing are incorporated herein pursuant to Fed. R. Bank. P. 7052.

A.      This Court has jurisdiction over the Sale Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d) or any other applicable Bankruptcy Rule, and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and the terms and conditions of this Sale Order should be immediately effective and enforceable upon its entry, and expressly directs entry of judgment as set forth herein.  The Debtors have articulated good and sound business reasons for waiving the stay otherwise imposed by Bankruptcy Rules 6004(g), 6006(d) and 7062.

C.      The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, as complemented by Bankruptcy Rules 2002, 6004 and 6006.

D.      This Court entered the Bidding Procedures Order on March 5, 2024.  The Auction was conducted on March 28, 2024 pursuant to the Bid Procedures.  The Transaction as described on the record at the Auction was properly identified as the Successful Bid for the Sale Property in the *Notice of Successful Bidders* filed and served on April 1, 2024 [Docket No. 224] pursuant to the Bid Procedures.

E.      A reasonable opportunity to object and be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, without limitation:  (i)  the Office of the United States Trustee for the District of Delaware; (ii) counsel for Buyer; (iii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis and counsel for the Committee; (iv) counsel for the DIP Secured Parties and the Prepetition Secured Parties; (v) the Securities and Exchange Commission; (vi) the United States Attorney for the District of Delaware; (vii) the Internal Revenue Service and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or order of the Court; (viii) parties to Executory Contracts or unexpired leases proposed to be assumed and assigned under the Purchase Agreement; (ix) all entities that filed a notice of appearance and request for service of papers in this case in accordance with Bankruptcy Rule 2002; and (x) all entities required to be served under Bankruptcy Rule 2002.

F.      As evidenced by the affidavits of service filed with this Court and based on representations of counsel at the Sale Hearing: (i) due, proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing, the Transaction, the Bidding Procedures Order, the Bid Procedures Notice, the Assumption and Assignment Notice, the Auction, the assumption, assignment and sale of the Assigned General Contracts and the other relief granted herein, and a substantially similar form of this Sale Order, have been provided in accordance with Bankruptcy Code sections 102(1), 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006, and in compliance with the Bid Procedures and the Purchase Agreement; (ii) such notice was good, sufficient and appropriate under the circumstances, and reasonably calculated to reach and apprise

all holders of Interests (as hereinafter defined and as defined in the Purchase Agreement), all creditors of the Debtors, and all other parties in interest about the Sale Motion, the Sale Hearing, the Transaction, the Bidding Procedures Order, the Bid Procedures Notice, the Auction, the assumption, assignment and sale of the Assigned General Contracts, and the other relief granted herein; and (iii) no other or further notice of the Sale Motion, the Sale Hearing, the Transaction, the Bidding Procedures Order, the Bidding Procedures, the Auction, related deadlines and requirements, the assumption, assignment and sale of the Assigned General Contracts and the other relief granted herein is or shall be required.  The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale Hearing, the Transaction, the Bidding Procedures Order, the Bid Procedures Notice, the Assumption and Assignment Notice, the Auction, the assumption, assignment and sale of the Assigned General Contracts and the transactions contemplated thereby is or shall be required.  The disclosures made by the Debtors concerning the Sale Motion, the Sale Hearing, the Transaction, the Bidding Procedures Order, the Bid Procedures Notice, the Assumption and Assignment Notice, the Auction, the assumption, assignment, and sale of the Assigned General Contracts and other relief granted herein, were good, complete, and adequate.

G.      In accordance with the Bid Procedures and the Bidding Procedures Order, the Debtors have served a *Notice of Debtors' Proposed Assumption and Assignment of Designated Executory Contracts and Unexpired Leases* [Docket No. 149] and *Supplemental Notice of Debtors' Proposed Assumption and Assignment of Designated Executory Contracts and Unexpired Leases* [Docket No. 175] (collectively, the "Assumption Notices") on, among others,

the counterparties to the Potential Assumed/Assigned Contracts, which Assumption Notices identified, based on the Debtors' books and records, all Cure Costs.  The service and provision of the Assumption Notices was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Assigned General Contracts or establishing a Cure Cost for any such Assigned General Contract.  Counterparties to the Assigned General Contracts have had an adequate opportunity to object to assumption and assignment of the Assigned General Contracts and the Cure Costs (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the counterparty from accepting performance by, or rendering performance to, Buyers for purposes of section 365(c)(1) of the Bankruptcy Code).  The deadline to file an objection to the stated Cure Cost (a "Cure Objection") has expired and to the extent any counterparty timely filed a Cure Objection, all such Cure Objections have been resolved, withdrawn, or overruled.  To the extent that any such party did not timely file a Cure Objection by April 10, 2024 (the "Cure Objection Deadline"), or such other date agreed to between the Debtors and such counterparty, such counterparty shall be deemed to have consented to (i) the assumption and assignment of the Assigned General Contract and (ii) the proposed Cure Cost.

H.      As demonstrated by the testimony and/or other evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing:  (i) the Debtors have appropriately marketed the Sale Property; (ii) the Debtors conducted the sale process in full compliance with the Bidding Procedures Order (including with respect to the solicitation and evaluation of bids, the conduct of the Auction and the acceptance of the offer set forth in the

Purchase Agreement); (iii) the Bid Procedures and the Auction were conducted in a non-collusive, fair and good faith manner; and (iv) a reasonable opportunity has been given to any interested party to make a higher or better offer for the Sale Property, the Assigned General Contracts, and the Assumed Liabilities.

I.    The Debtors as Sellers and otherwise:  (i) have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the sale of the Sale Property by the Debtors has been duly and validly authorized by all necessary corporate action of the Debtors; (ii) has all of the corporate power and authority necessary to consummate the Transaction contemplated by the Purchase Agreement; (iii) has taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation by the Debtors of the Transaction; and (iv) need no consents or approvals, other than those expressly provided for in the Purchase Agreement, subject to the waiver of such consents or approvals to the extent provided for in the Purchase Agreement and as may be permitted under applicable law.  The Debtors/Sellers are the legal and equitable owner(s) of the Sale Property and, upon entry of this Sale Order, shall have full authority under applicable organizational documents, law or rules to consummate the Transaction contemplated by the Purchase Agreement.  The Purchase Agreement and the Transaction have been duly and validly authorized by all necessary corporate action, as the case may be, of the Debtors as Sellers and otherwise.

J.    The Bid Procedures established by the Bid Procedures Order have been complied with in all material respects by the Debtors and Buyer.

K.     The consideration provided by the Buyer pursuant to the Purchase Agreement: (i) is fair and reasonable; (ii) is the highest and best offer available for the Sale Property; (iii) will provide a greater recovery to the Debtors' estates than would be provided by any other available alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and other applicable law.

L.     Approval of the Purchase Agreement and consummation of the Transaction is in the best interests of the Debtors, their estates, creditors and other parties in interest.  The Debtors have articulated a good and sufficient business justification supporting the sale of the Sale Property to Buyer on the terms set forth in the Purchase Agreement, pursuant to section 363 and 365 of the Bankruptcy Code.  The Debtors' determination that the Purchase Agreement constitutes the highest or otherwise best offer for the Sale Property constitutes a valid and sound exercise of the Debtors' fiduciary duties business judgment and constitutes a valid and sound exercise of the Debtors' business judgment.

M.     The Purchase Agreement was negotiated, proposed and entered into by Sellers and Buyer without collusion, in good faith and from arm's-length bargaining positions.  Buyer is not an "insider" of Sellers, as that term is defined in Bankruptcy Code section 101.  Sellers and Buyer have not engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code section 363(n).

N.     Buyer is a good faith purchaser under Bankruptcy Code section 363(m) and, as such, is entitled to all of the protections afforded thereby.  Buyer will be acting in good faith within the meaning of Bankruptcy Code section 363(m) in consummating the Sale Transaction.

O.    The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under other applicable law.

P.    The transfer of the Sale Property to the Buyer shall be a legal, valid and effective transfer of the Sale Property and, except for the Assumed Liabilities, shall vest the Buyer at Closing with all right, title and interest of the Debtors in and to the Sale Property, free and clear of all claims (as defined in section 101(5) of the Bankruptcy Code, "Claims"), liens (as defined in section 101(37) of the Bankruptcy Code, "Liens"), encumbrances and all other interests (collectively including each of the foregoing, and as defined in the Purchase Agreement and hereafter in this Sale Order, "Interests"), including, but not limited to:  (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal or termination of the Debtors' interest in the Sale Property, the Assigned General Contracts, or any similar rights, including rights under section 365(h) of the Bankruptcy Code; (ii) those relating to taxes arising under or out of in connection with, or in any way relating to the operation of the Sale Property prior to the Closing; and (iii) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, rights of setoff or recoupment, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, and (b) all debts arising in any way in connection with any agreements, acts or failures to act of any of the Debtors or any of the Debtors' predecessors or affiliates, Claims, obligations, liabilities, rights of set off or recoupment, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind

and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of this bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, Claims otherwise arising under doctrines of successor liability to the greatest extent permitted by applicable law or rules.

Q.      The Debtors may sell the Sale Property free and clear of all Interests of any kind or nature whatsoever, except for the Assumed Liabilities, as contemplated by the Purchase Agreement because, in each case, one or more of the standards set forth in sections 363(f)(1) through 363(f)(5) of the Bankruptcy Code have been satisfied.  Those holders of Interests and non-Debtor parties to Assigned General Contracts that affirmatively consented to the Transaction and the entry of this Sale Order (on the record or otherwise), or did not object, or who withdrew their objections to the Sale Motion or the Transaction, are deemed to have consented to the Transaction pursuant to sections 363(f)(2) and 365(c)(1) of the Bankruptcy Code. Those holders of Interests and non-Debtor parties to Assigned General Contracts that did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the net cash proceeds of the Transaction ultimately attributable to the Sale Property against or in which they assert an Interest.

R.      Except as expressly set forth in the Purchase Agreement with respect to the Assumed Liabilities, the Buyer shall have no liability for any liability, Claim or other obligation of or against the Debtors related to the Sale Property by reason of the transfer to the Buyer of the Sale Property.  The Buyer shall not be deemed, as a result of any action taken in connection with the purchase of the Sale Property, to:  (i) be a successor to the Debtors (other than with respect to

the Assumed Liabilities and any obligations arising under the Assigned General Contracts from and after the Closing); or (ii) have, *de facto* or otherwise, merged with or into the Debtors.  The Buyer is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the Purchase Agreement with respect to the Assumed Liabilities, such Assumed Liabilities include, without limitation, for the avoidance of doubt, all Warranty Obligations incurred prior to the Closing Date.

S.      The Buyer would not have entered into the Purchase Agreement and would not consummate the Transaction, thus adversely affecting the Debtors, their estates and their creditors and other stakeholders, if the transfer of the Sale Property to the Buyer and the assumption, assignment and sale of the Assigned General Contracts to Buyer, and the assumption of the Assumed Liabilities by Buyer were not, except as otherwise expressly provided in the Purchase Agreement with respect to the Assumed Liabilities, free and clear of all Interests of any kind or nature whatsoever (including, without limitation, fines or penalties), or if the Buyer would, or in the future could, be liable for any of such Interests including, but not limited to:  (i) any employment or labor agreements; (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors (multi-employer or otherwise); (iii) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related Claim, including, without limitation, Claims that might otherwise arise under or pursuant to: (a) the Employee Retirement, Income, Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor

Relations Act, (f) the Worker Adjustment and Retraining Act of 1988 or any similar state or local laws, rules or ordinances, (g) the Age Discrimination and Employee Act of 1967, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, (i) the Jones Act, (j) the Unruh Civil Rights Act, (k) the Wisconsin Fair Employment Law, (l) the California and Wisconsin unemployment compensation laws or any other similar state laws; (iv) any products liability, personal injury or similar Claims, whether pursuant to any state or federal laws or otherwise, including, without limitation, asbestos-related Claims; (v) environmental Claims or Liens arising from conditions or emissions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et seq.*, or similar state or local statutes or ordinances; (vi) any bulk sales or similar law and any related rules; (vii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (viii) any theories of successor liability.

T.     The Debtors have demonstrated that it is an exercise of their sound business judgment to assume, assign and sell the Assigned General Contracts to the Buyer in connection with the consummation of the Transaction, and the assumption, assignment and sale of the Assigned General Contracts is in the best interests of the Debtors, their estates and their creditors and other stakeholders. The Assigned General Contracts being assigned to, and the related Assumed Liabilities being assumed by, the Buyer are an integral part of the Sale Property being purchased by Buyer, and, accordingly, such assumption, assignment and sale of the Assigned

General Contracts and related Assumed Liabilities are reasonable, fair under applicable law or rules, and enhance the value of the Debtors' estates.

U.      The Purchase Agreement is a valid and binding contract between the Debtors and the Buyer, which is and shall be enforceable according to its terms.  All of the provisions of the Purchase Agreement are non-severable and mutually dependent.

V.      Buyer has satisfied the requirements of Bankruptcy Code section 365 and has provided sufficient evidence of its ability to provide adequate assurance of future performance with respect to all Assigned General Contracts.

W.      Subject to the provisions in this Sale Order and the Bidding Procedures Order relating to the Assigned General Contracts, the Debtors and Buyer have cured or provided adequate assurance of cure of any defaults existing under all Assigned General Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code. The Debtors and Buyer have provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default under any of the Assigned General Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. The Buyer has provided adequate assurance of future performance under all Assigned General Contracts, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

X.      The Transaction does not constitute a *sub rosa* chapter 11 plan.  The Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a chapter 11 plan for any of the Debtors.

Y.      The Debtors have articulated good and sound business reasons for waiving the stay otherwise imposed by Bankruptcy Rules 6004(g), 6006(d) and 7062.

THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.      The Sale Motion is granted as to the Sale Property and the Transaction and approved in all respects as to the Sale Property and the Transaction (other than with respect to matters already addressed by the Bidding Procedures Order).

2.      Any objections to the entry of this Sale Order or the relief granted herein and requested in the Sale Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are denied and overruled.

**Approval of the Purchase Agreement and the Sale Transaction**

3.      The Purchase Agreement, and all other ancillary documents, agreements, instruments, notices and papers related thereto or contemplated thereby, and all of the terms and conditions thereof, and the Transaction are hereby approved in all respects.

4.      Pursuant to Bankruptcy Code sections 363(b), 363(f), and 365(f), the Debtors are hereby authorized to:  (a) execute the Purchase Agreement, along with any additional agreements, instruments or documents that may be reasonably necessary or appropriate to implement the Purchase Agreement or the Transaction, including, without limitation, the Transition Services Agreement, provided that such additional agreements, instruments or documents do not materially change its terms adversely to the Debtors' estates; (b) consummate the Transaction in accordance with the terms and conditions of the Purchase Agreement and the agreements, instruments or documents contemplated thereby; and (c) execute and deliver, perform under, consummate,

implement, and close fully the transactions contemplated by the Purchase Agreement, including the assumption and assignment to Buyer (in accordance with the Purchase Agreement) of the Assigned General Contracts, together with all additional instruments, agreements, and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Transaction.  The automatic stay imposed by Bankruptcy Code section 362 is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

5.      The transfer of the Sale Property to the Buyer pursuant to the Purchase Agreement constitutes a legal, valid and effective transfer of the Sale Property, and shall vest the Buyer with all right, title and interest of the Debtors in and to the Sale Property, free and clear of all Interests of any kind or nature whatsoever other than the Assumed Liabilities.

6.      Except for the Assumed Liabilities, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Sale Property shall be transferred to Buyer, and upon the Closing shall be, free and clear of all Interests of any kind or nature whatsoever (including, but not limited to, those described in Recitals P and Q of this Sale Order), and all such Interests of any kind or nature whatsoever shall attach to the net cash proceeds of the Transaction in the order of their priority, with the same validity, force and effect that they now have as against the Sale Property, subject to any claims and defenses the Debtors may possess with respect thereto. Without limiting the generality of the foregoing, the Buyer shall acquire the Sale Property free and clear of any and all workers' compensation, pension, and employment related liabilities of the Debtors.

7.      Except as expressly permitted otherwise by this Sale Order or the Purchase Agreement, all persons and entities, including, but not limited to, all debt security holders; equity security holders; governmental, tax and regulatory authorities; lenders; trade creditors; and other creditors holding Interests of any kind or nature whatsoever against or in the Debtors or the Sale Property  (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with or in any way relating to the Debtors, the Sale Property, the operation of the Sale Property prior to the Closing or the Transaction are forever barred, estopped and permanently enjoined from asserting against the Buyer, its successors or assigns, their property or the Sale Property such persons' or entities' Interests (including without limitation, any right of set-off or recoupment).

8.      Notwithstanding the foregoing, upon the Closing of the Transaction, each of the Debtors' creditors and any other holder of an Interest is authorized to execute such documents, instruments, statements, notices, records, and papers, and take all other actions as may be necessary to release its Interests in the Sale Property, if any, as such Interests may have been recorded or may otherwise exist.  To the extent that any creditor/Interest holder does not execute such documents, instruments, statements, notices, records and papers and take such necessary action, the Buyer shall be authorized to enforce the Sale Order in the Bankruptcy Court against such entities.

9.      If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens or other documents or agreements evidencing Interests in the Debtors or the Sale Property shall not have delivered to the Debtors prior to the Closing, in proper form for filing and

executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Interests that the person or entity has with respect to the Debtors or the Sale Property or otherwise, then, so long as the Prepetition Liens and DIP Liens attach to the proceeds of the Sale Transaction in the same order of priority as among such DIP Liens and Prepetition Liens that existed prior to the Sale Transaction and with such Liens retaining the same validity, force, and effect such Liens had prior to the Sale Transaction:  (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Debtors or the Sale Property, and (b) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the release of all Interests in the Debtors or the Sale Property of any kind or nature whatsoever.

10.    This Sale Order: (a) shall be effective as a determination that, except for the Assumed Liabilities, at Closing, all Interests of any kind or nature whatsoever existing as to the Sale Property prior to the Closing have been unconditionally released, discharged and terminated as set forth herein, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any

documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Sale Property.

11.     The Buyer shall have no obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment with respect to current employees or former employees of the Debtors.  Except to the extent expressly provided in the Purchase Agreement, the Buyer shall have no liability with respect to any collective bargaining agreement, employee pension plan, employee welfare (including, without limitation, any retiree benefit liabilities or obligations) or retention, benefit and/or incentive plan to which the Debtors or any affiliate is a party and relating to the Sale Property (including, without limitation, arising from or related to the rejection or other termination of any such agreement), and the Buyer shall in no way be deemed parties to or assignees of any such agreement, and no employee of the Buyer shall be deemed in any way covered by or a party to any such agreement, and, except for Assumed Liabilities, all parties to any such agreement are hereby permanently enjoined from asserting against the Buyer any and all Claims arising from or relating to such agreement.  All notices, if any, required to be given to the Debtors' employees pursuant to the Workers Adjustment and Retraining Notification Act, or any similar federal or state law, shall be the sole responsibility and obligation of the Debtors, and the Buyer shall have no duties, responsibility or liability therefor.

12.     The Buyer shall not assume or be obligated to pay, perform or otherwise discharge any workers' compensation debts, obligations and liabilities of the Debtors arising pursuant to the California and Wisconsin Workers' Compensation Acts, or pursuant to the actions, resolutions,

rules or regulations of or for the California and Wisconsin Workers' Compensation Commissions or any related board or administrative body.  The Buyer's purchase of the Sale Property under the Purchase Agreement is free and clear with respect to all workers' compensation obligations or liabilities, including, without limitation, workers' compensation claims or suits of any type, whether now known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination or other incidents, acts or injuries prior to the Closing Date, including, but not limited to, any and all workers' compensation claims filed or to be filed, or re-openings of those claims, by or on behalf of any of the Debtors' or their affiliates' current or former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments or other obligations of any nature whatsoever of the Debtors relating in any way to workers' compensation liability.

13.     In addition, except for Assumed Liabilities, including, without limitation, for the avoidance of doubt Warranty Obligations, or as otherwise provided for in the Purchase Agreement, the Buyer shall not assume or be obligated to pay, perform or otherwise discharge any debts, obligations and liabilities of the Debtors arising pursuant to the Debtors' ownership or operation of its business prior to the Closing Date relating to actions, claims, suits, torts, causes of action, liabilities or obligations of the Debtors relating to customers, customers' patients, Debtor products (including such products that will be part of the Sale Property), former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, who have received, who are receiving as of the Closing Date or who are or could be eligible to receive any short-term

or long-term disability benefits, or any other benefits of any kind arising out of or relating in any way to the employment of persons by the Debtors or its affiliates, including but not limited to, benefits or claims under any state  unemployment compensation laws (including, without limitation, the California and Wisconsin state unemployment compensation laws and rules) or any other similar state laws; Title VII of the Civil Rights Act of 1964, as amended; the Americans with Disabilities Act of 1990; similar state law Human Rights acts, including, without limitation, such laws in California and Wisconsin; the Age Discrimination in Employment Act, as amended; the Jones Act; or any other state or federal benefits or claims relating to any employment with the Debtors or any of their affiliates or predecessors.

14.     Notwithstanding section 3.4.4 of the Purchase Agreement, the Transition Services Agreement shall be agreed to by the Debtors and the Buyer prior to the Closing Date.  The terms of the Transition Services Agreement shall control with respect to the Buyer's obligations to fund the transition as per the agreed budget contemplated by the Transition Services Agreement.

15.     Except for the Assumed Liabilities, the Buyer shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Sale Property. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Purchase Agreement, the Buyer shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of product, antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising,

whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing, including, but not limited to, liabilities on account of any Taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Sale Property prior to the Closing. The Buyer has given substantial consideration under the Purchase Agreement for the benefit of holders of Interests. The consideration given by the Buyer shall constitute valid and valuable consideration for the release of any potential Claims of successor liability against the Buyer.

16.     Except for the Assumed Liabilities, the sale, transfer, assignment and delivery of the Sale Property shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtors and their estates. Except for the Assumed Liabilities, all persons holding Interests against or in the Debtors or the Sale Property of any kind or nature whatsoever (including, but not limited to, the Debtors and/or their respective successors, including any trustees thereof, creditors, employees, unions, former employees and shareholders, and their respective successors or assigns) hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Interests of any kind or nature whatsoever against the Buyer, its property or its successors and assigns or the Sale Property, as an alleged successor or otherwise, with respect to any Interest of any kind or nature whatsoever such person or entity had, has or may have against or in the Debtors, their estates, their respective officers, directors or shareholders or the Sale Property. Following the Closing, no holder of an Interest in or against the Debtors or the Sale Property shall interfere with

Buyer's title to or use and enjoyment of the Sale Property based on or related to such Interest, or any actions that the Debtors have or may take in their chapter 11 cases.

17.     The Debtors hereby are authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume, assign and sell to the Buyer, effective upon the Closing, the Assigned General Contracts free and clear of all Interests of any kind or nature whatsoever, except for the Assumed Liabilities, and (b) execute and deliver to Buyer such documents or other instruments as the Buyer deem are necessary or appropriate to assign and transfer the Assigned General Contracts to the Buyer.

18.     With respect to the Assigned General Contracts: (a) the Assigned General Contracts shall be transferred and assigned to, and following the Closing of the Transaction, shall remain in full force and effect for the benefit of the Buyer, except as otherwise provided in section 365(c) of the Bankruptcy Code, notwithstanding any provision in any such Assigned General Contracts (including those of the type described in sections 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assigned General Contracts after such assumption by the Debtors and assignment and sale to the Buyer at Closing; (b) each Assigned General Contracts is an executory contract or unexpired lease under section 365 of the Bankruptcy Code at the Closing; (c) the Debtors may assume each of the Assigned General Contracts in accordance with section 365 of the Bankruptcy Code at the Closing; (d) the Debtors may assign and sell each Assigned General Contracts in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned General Contracts that

prohibit or condition the assignment of such Assigned General Contracts or allow the party to such Assigned General Contracts to terminate, recapture, set-off or recoup, impose any penalty, condition renewal or extension or modify any term or condition upon the assignment of each such Assigned General Contract, constitute unenforceable anti-assignment provisions, which are void and of no force and effect; (e) all other requirements and conditions under sections 363 and 365 (including without limitation, the satisfaction of the requirements under section 365(c)(1)) of the Bankruptcy Code for the assumption by the Debtors and sale and assignment to the Buyer of each Assigned General Contract have been satisfied; and (f) upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title and interest of each Assigned General Contract.  Any portions of the leases, which purport to permit the landlords thereunder to cancel the remaining term of any of such leases if the Debtors discontinue their use or operation of the leased premises, are void and of no force and effect, and shall not be enforceable against the Buyer, its assignees or sublessees, and the landlords under such leases shall not have the right to cancel or otherwise modify such leases or increase the rent, assert any Claim or impose any penalty by reason of such discontinuation, the Debtors' cessation of operations, the assignment of Assigned General Contracts to the Buyer, or the interruption of Debtor business activities.

19.     All defaults or other obligations of the Debtors under the Assigned General Contracts arising or accruing on or prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Buyer up to the Cure Cap (as defined in the Purchase

Agreement) and the Debtors if in excess of the Cure Cap and in accordance with terms of the Purchase Agreement, the Bidding Procedures Order, and this Sale Order, and the Buyer shall have no liability or obligation arising or accruing prior to the Closing Date under the Assigned General Contracts except as set forth therein. For the avoidance of doubt, any amount in excess of the Cure Cap to be paid by the Debtors shall be a monetary amount only. The Buyer and/or the Debtor, if applicable, shall satisfy their cure obligations as of the date of the assumption and assignment of the Assigned General Contracts in accordance with the terms of the Assigned General Contracts (subject to any applicable provisions of the Bankruptcy Code) and the Purchase Agreement and within a reasonably practicable time period following the Closing Date.

20. Notwithstanding paragraph 19 of this Sale Order, to the extent that any counterparty to an Assigned General Contract did not object to its Cure Cost by the Cure Objection Deadline, such counterparty is deemed to have consented to such Cure Cost and the assumption and assignment of its respective Assigned General Contract(s) to Buyer in accordance with the Purchase Agreement.

21. From and after the satisfaction of any applicable cure obligations, each non-Debtor party to an Assigned General Contracts is hereby forever barred, estopped and permanently enjoined from: (a) asserting against the Buyer and the Debtors, or the Sale Property, any default arising prior to or existing as of the Closing Date or any counterclaim, defense, setoff, recoupment or any other Claim asserted or assertable against the Debtors, and (b) imposing or charging against the Buyer and the Debtors any accelerations, assignment fees, defaults, increases or any other fees, charges, or conditions to assignment as a result of the Debtors' assumption, assignment and sale

to the Buyer of the Assigned General Contracts. The validity of such assumption, assignment and sale of the Assigned General Contracts, which shall in all events be effective as of the Closing Date, shall not be affected by the pendency or resolution of any dispute between the Debtors, the Buyer, and any non-Debtor party to an Assigned General Contract.

22.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned General Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer' rights to enforce every term and condition of the Assigned General Contracts.

23.     The Debtors are authorized to satisfy in full the Cure Cost in excess of the Cure Cap through the Closing solely with respect to any Assigned General Contract.  The Buyer shall pay the Cure Costs subject to the Cure Cap and any additional Cure Costs associated with Assumed Liabilities not related to Assigned General Contracts.

24.     Notwithstanding anything herein to the contrary, and subject to the Purchase Agreement, prior to the Closing Date, Buyer may remove or add any contract or lease from the list of Assigned General Contracts (excluding any Assigned General Contracts assigned to Nuance Intermediary, LLC pursuant to a Court order) pursuant to the procedures set forth in the Purchase Agreement.  Buyer shall have the right to notify Sellers in writing of any Assigned General Contract that they do not wish to assume or an Available Contract that Purchasers wish to add as an Assigned Contract (excluding any Assigned General Contracts assigned to Nuance Intermediary, LLC pursuant to a Court order) in accordance with Section 1.5 of the Purchase Agreement.

25.     This Sale Order, subject to applicable bankruptcy law and rules, transfers to Buyer all Acquired Claims as part of the Sale Property, including, without limitation, all transferrable rights, claims and causes of action (or the proceeds thereof) under chapter 5 of the Bankruptcy Code against an entity which is a counterparty to a General Assigned Contract or is a creditor in connection with an Assumed Liability (collectively, the "<u>Acquired Claims</u>"); provided, however, that any Acquired Claims arising under Chapter 5 of the Bankruptcy Code acquired by Buyer shall be deemed waived and extinguished on the Closing and shall not be pursued.

### Additional Provisions

26.     The consideration provided by Buyer for the Sale Property under the Purchase Agreement is fair and reasonable and may not be avoided under Bankruptcy Code section 363(n).

27.     The Transaction is undertaken by Buyer without collusion and in good faith, in accordance with Bankruptcy Code sections 363(m) and 363(n).  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the sale of the Sale Property to Buyer, unless such authorization is duly stayed pending such appeal.  Buyer is a good-faith purchaser of the Sale Property and is entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m) and other applicable law.

28.     This Court retains jurisdiction to:

(a)     Interpret, implement and enforce the terms, obligations and administrative expenses, if any, arising hereunder and under the Purchase Agreement (of either Sellers or Buyer), and provisions of this Sale Order, the Bidding Procedures Order, and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements, documents, instruments, papers, notices, and orders executed in connection

therewith in all respects, and resolve any disputes thereunder, except as otherwise provided therein;

(b)     Protect Buyer and the Assigned General Contracts, or the Sale Property against any Interests or Excluded Liabilities, including, without limitation, to enjoin the commencement or continuation of any action seeking to impose on the Buyer successor liability;

(c)     Enter orders in aid or furtherance of the Transaction, including compelling delivery of all Sale Property to the Buyer (by payment, transfer or otherwise), including, without limitation, Inventory, if applicable;

(d)     Adjudicate any and all issues relating to the Assigned General Contracts;

(e)     Adjudicate all issues relating to any Liens or Interests; and

(f)     Adjudicate any and all issues relating to the Sale Property, the proceeds of the Transaction, the Sale Motion, and the Purchase Agreement.

29.     The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors or their estates.

30.     The failure specifically to include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement is hereby authorized and approved in its entirety, as it may be amended or supplemented in accordance with its terms and this Sale Order.

31.     To the extent of any conflict between the Purchase Agreement and this Sale Order as they relate to the rights and obligations of the Sellers/Debtors and the Buyer with respect to each other, the Purchase Agreement shall govern except, where this Sale Order expressly modifies

the Purchase Agreement. To the extent of any conflict between the Purchase Agreement and this Sale Order not within the scope of the immediately preceding sentence, including as they relate to the rights and obligations of parties in interest other than the Debtors and the rights and obligations of the Buyer with respect to such parties in interest, this Sale Order shall govern.

32.     This Sale Order and the Purchase Agreement: (a) shall be binding in all respects upon all creditors of and holders of equity interests in any Debtor (whether known or unknown), any holders of Interests, all non-Debtor parties to the Assigned General Contracts, the Buyer and all successors and assigns of the Buyer, the Debtors and their affiliates, the Sale Property and any subsequent trustees appointed in this chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code, and (b) shall not be subject to rejection. Nothing contained in any chapter 11 plan of reorganization or liquidation filed or confirmed in this bankruptcy case or in any related confirmation order, disclosure statement, or order approving disclosure statement shall conflict with or derogate from the provisions of this Sale Order and the Purchase Agreement.

33.     Each and every federal, state and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transaction.

34.     All entities that are in possession of some or all of the Sale Property, including, without limitation, the Debtors' customers in possession of Inventory, upon the Closing Date, hereby are authorized to surrender possession of the Sale Property to the Buyer on the Closing Date. The Buyer shall be authorized to enforce this provision of the Sale Order in the Bankruptcy Court to cause the turn over of such Sale Property if surrender is not tendered by such entities.

35.     To the extent permitted under applicable law, including section 1146 of the Bankruptcy Code, the Transaction and the Sale Property contemplated thereby shall be exempt from any sales, use, purchase, transfer, franchise, deed, fixed asset, stamp, documentary stamp, use, or similar fees for Taxes, governmental charges, and recording charges (including any interest and penalty thereon), which may be payable by reason of the Transaction.

36.     After the Closing Date, the caption of the jointly administered cases shall be revised to read as follows:

| | |
|---|---|
| _____ ) | Chapter 11 |
| In re:                                              ) | |
|                                                      ) | Case No. 24-10245(JTD) |
| MIST HOLDINGS, INC., *et al*.,[5]      ) | |
|                                                      ) | (Jointly Administered) |
| Debtors.                                   ) | |
| _____) | |

37.     The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

---

[5]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Sientra, Inc. (1000); Mist Holdings, Inc. (4221); Mist, Inc. (1202); and Mist International, Inc. (3363).  The Debtors' service address is 3333 Michelson Drive, Suite 650, Irvine, CA 92612.

38.    *Resolution of Issues of the United States.*    Notwithstanding any provision in the Sale Motion, the Purchase Agreement, any assumption or assignment of contract notices, this Sale Order, and any implementing sale documents (collectively, "Sale Documents"), nothing shall: (1) authorize the assumption, sale, assignment or other transfer to the Buyer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) property, including but not limited to, intellectual property and patents, (v) leases, (vi) agreements, including but not limited to federal pricing agreements,  (vii) certifications, (viii) applications or other interests of the federal government (collectively, "Federal Interests") without compliance by the Debtors and the Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law; (2) be interpreted to set cure amounts or to require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (3) waive, alter or otherwise limit the United States' property rights, including but not limited to, inventory, inventions, records, patents, intellectual property, licenses, and data; (4) affect the setoff or recoupment rights or defenses of a governmental unit (as defined in 11 U.S.C. § 101(27)); (5) authorize the assumption, transfer, sale or assignment of any governmental unit's (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements, obligations and approvals under non-bankruptcy laws; (6) release, nullify, preclude or enjoin the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the owner or operator of property; (7) confer jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (8) divest any tribunal of any jurisdiction it may have under

police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order; or (9) expand the scope of 11 U.S.C. § 525.

39. *Provisions Regarding Oracle.* Notwithstanding anything herein to the contrary, to the extent not resolved prior to the Sale Hearing, all rights and defenses of the Debtors, the Buyer, and Oracle America, Inc. ("Oracle") with respect to *Oracle's Limited Objection to and Reservation of Rights Regarding Debtors' Sale Motion and Notice of Debtors' Proposed Assumption and Assignment of Designated Executory Contracts and Unexpired Leases* [Docket No. 233] are hereby fully reserved and preserved until the parties have negotiated a consensual resolution or is otherwise determined by further order of this Court.

40. *Provisions Regarding LBA IV-PPI, LLC.* Notwithstanding anything herein to the contrary, to the extent not resolved prior to the Sale Hearing, all rights and defenses of the Debtors, the Buyer, and LBA IV-PPI, LLC with respect to the *Limited Objection of LBA IV-PPI, LLC to Debtors' Motion for Approval of Sale of Substantially all of the Debtors' Assets, Request for Adequate Protection and Reservation of Rights* [Docket No. 234] are hereby fully reserved and preserved until the parties have negotiated a consensual resolution or is otherwise determined by further order of this Court.

41. *Provisions Regarding Salesforce.* Notwithstanding anything herein to the contrary, to the extent not resolved prior to the Sale Hearing, all rights and defenses of the Debtors, the Buyer, and Salesforce.com, Inc. ("Salesforce"), solely with respect to the descriptions of the Salesforce Assigned General Contracts in the Purchase Agreement, are hereby fully reserved and

preserved until the parties have negotiated a consensual resolution or is otherwise determined by further order of this Court.

42.     *Provisions Regarding Adventist*.  Notwithstanding anything herein to the contrary, all rights, claims and defenses (collectively, the "Disputes") of the Debtors, the Buyer, and Adventist Health System/West ("Adventist") with respect to *Adventist's Limited Objection to and Reservation of Rights to the Debtors' Proposed Assumption and Assignment of Designated Executory Contracts and Unexpired Leases* [Docket No. 279] or any agreements between, among or relating to the Debtors and Adventist are hereby fully reserved and preserved until such time as the parties have negotiated a consensual resolution of the Disputes or the Disputes are otherwise determined by further order of this Court.

43.     *Provisions Regarding The Queen's Medical Center*.  Notwithstanding anything herein to the contrary, to the extent not resolved prior to the Sale Hearing, all rights and defenses of the Debtors, the Buyer, and The Queen's Medical Center with respect to its *Objections to Notice of the Debtors' Proposed Assumption and Assignment of Contracts Filed March 8, 2024* [Docket No. TBD] are hereby fully reserved and preserved until the parties have negotiated a consensual resolution or is otherwise determined by further order of this Court.

44.     The provisions of this Sale Order are non-severable and mutually dependent.

45.     Upon entry of this Sale Order, notice shall be provided to:  (i)  the Office of the United States Trustee for the District of Delaware; (ii) counsel for Buyer; (iii) counsel for the Committee; (iv) counsel for the DIP Secured Parties and the Prepetition Secured Parties; (v) the Securities and Exchange Commission; (vi) the United States Attorney for the District of Delaware;

(vii) the Internal Revenue Service, the California and Wisconsin taxing authorities, the Food and Drug Administration, and any other federal, state or local governmental agency to the extent required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or order of the Court; (viii) parties to Executory Contracts or unexpired leases proposed to be assumed and assigned under the Purchase Agreement; (ix) all entities that filed a notice of appearance and request for service of papers in this case in accordance with Bankruptcy Rule 2002; and (x) all entities required to be served under Bankruptcy Rule 2002

46.     The ten-day stay otherwise imposed by Bankruptcy Rules 6004(g), 6006(d) and 7062 is hereby waived, and this Sale Order shall be effective immediately upon entry.  Time is of the essence in closing the transactions referenced herein, and the Debtors and Buyer intend to close the Transaction as soon as practicable and there is no credible basis for concluding that a delay in the sale of the Sale Property would result in a higher or better offer for the Sale Property other than the offer in the Purchase Agreement.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay or risk its appeal being foreclosed as moot.

47.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006.

**<u>EXHIBIT A</u>**

**Asset Purchase Agreement**