# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SIENTRA, INC., *et al.*,[1] | Case No. 24-10245 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline: April 30, 2024 at 4:00 p.m. (ET)**<br>**Hearing Date: To Be Determined** |

## LISA AUTHEMENT'S
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Lisa Authement ("Ms. Authement"), by her undersigned counsel, files this *Motion for Relief from the Automatic Stay* (the "Motion") for relief from the automatic stay to allow Ms. Authement to resume and prosecute to conclusion the civil action against Debtor Sientra, Inc. ("Sientra") and other defendants in the California state court action styled as *Lisa Authement v. Miradry, Inc., Sientra, Inc., and Does 1-100*, No. 21-cv-390457 (the "California Action"), pursuant to an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"). In support hereof, Ms. Authement states as follows:

## VENUE AND JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. § 1409(a). The statutory basis for the relief requested in this motion is 11 U.S.C. § 362.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Sientra, Inc. (1000); Mist Holdings, Inc. (4221); Mist, Inc. (1202); and Mist International, Inc. (3363). The Debtors' service address is 3333 Michelson Drive, Suite 650, Irvine, CA 92612.

16660882/3

**BACKGROUND**

3. The MiraDry System (the "MiraDry System") is a device that delivers microwave energy below the skin of the underarms in order to destroy sweat glands. The Debtors were the owner of the MiraDry System at all relevant times, until the Debtors sold the MiraDry business to a third party buyer in June 2021.

4. In or about September 2019, Ms. Authement learned of the MiraDry System and the procedure after visiting MiraDry's website, where she read statements widely circulated by MiraDry including that the MiraDry System was "safe," and that side effects consisted of "some localized soreness or swelling," with "some patients [having] short-term altered sensation in the skin of their underarms or upper arms which gradually disappears." Significantly, the Debtors' website claimed that the MiraDry System was "for anyone who is bothered by underarm sweat" - just one of many public statements which demonstrated Defendants, widespread promotion of the MiraDry System for non-approved, off-label use on patients who did not suffer from hyperhidrosis.

5. In or about September 2019, Ms. Authement visited Eastern Short Cosmetic Surgery in Fairhope, Alabama to seek a consultation for treatment with the MiraDry System. On information and belief, Defendants had trained, suggested to, and/or instructed relevant clinicians and employees at Eastern Shore Cosmetic Surgery that the System was safe for use on anyone who was bothered by their sweat, rather than merely those suffering from primary axillary hyperhidrosis. On information and belief, Defendants also trained, instructed, suggested, and/or recommended Eastern Shore Cosmetic Surgery clinicians to select energy level 5 of the System to treat patients.

6. On September 19, 2019, Ms. Authement was treated at an energy level of 5 with the System. Immediately afterwards, Ms. Authement felt pain and a burning sensation in her

2

16660882/3

underarms. Concerned, Ms. Authement contacted Eastern Shore Cosmetic who, consistent with the Debtors' corporate materials, informed her the symptoms were normal and would shortly resolve.

7. Unfortunately, that was not the case. Over the weeks and months that followed Ms. Authement's symptoms progressively worsened from red splotches on her underarms to gaping, infection-filled ulcers. Ms. Authement required multiple treatments to address her injuries.

8. As a result of the injuries directly and proximately caused by the MiraDry System, Ms. Authement suffered horrific pain and severe loss of mobility for months after what had been advertised by Defendants as a simple non-invasive procedure with mild, temporary side effects. Now, more than a year after treatment with MiraDry System, Ms. Authment has been left with severe and unsightly scarring in her left underarm and nerve deficits in both arms. Additional future treatment is likely, and Ms. Authement's injuries are likely permanent.

9. On September 16, 2021, Ms. Authement filed the *Complaint and Demand for Jury Trial*, (the "Complaint"), attached hereto as **Exhibit B**, thereby initiating the California Action. For the next two years the case progressed with a lengthy discovery process which included numerous discovery requests and motion practice, and trial date was set for summer 2024.

10. On February 12, 2024 (the "Petition Date"), the above-captioned debtors (collectively, the "Debtors") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Shortly after the Petition Date, Ms. Authement received the *Defendant's Notice of Filing of Petition Under Chapter 11 of the United States Bankruptcy Code and of Automatic Stay*, and as a result of the bankruptcy filing, the California Action was stayed.

## ARGUMENT

11. Section 362(d) of the Bankruptcy Code states, in pertinent part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) For cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) With respect to a stay of an act against property under subsection (a) of this section, if –
>
>> (A) the debtor does not have equity in such property; and
>>
>> (B) such property is not necessary to be effective reorganization . . . .

11 U.S.C § 362(d).

12. Because the automatic stay is not meant to be indefinite or absolute, the Court has authority to grant relief from the stay in appropriate circumstances. *In re Rexene Prods., Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). In circumstances such as those here, "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." *In re Tribune Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009) (quoting legislative history of § 362(d)) (internal citations omitted).

13. Section 362(d)(1) provides that the automatic stay may be lifted where "cause" exists. After a *prima facie* showing by a movant, the debtor has the burden of proving that a movant is not entitled to relief from the stay. *In re Rexene Prods., Co.*, 141 B.R. at 577; 11 U.S.C. § 362(g).

14. "Cause" is not defined in the Bankruptcy Code and must be determined on a case-by-case basis. *IBM v. Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991). Most

courts employ an equitable balancing test to determine "cause." *Rexene Prods., Co.*, 141 B.R. at 576.

15. Courts in this District rely upon *Rexene*'s three-pronged balancing test to determine whether "cause" exists for granting relief from the automatic stay to continue litigation:

    a.    any great prejudice to either the bankruptcy estate or the debtor will result,

    b.    the hardship to the movant by maintenance of the stay considerably outweighs the hardship to the debtor, and

    c.    the movant has a probability of prevailing on the merits.

*See In re Tribune Co.*, 418 B.R. at 126 (citing *Rexene Prods. Co.*, 141 B.R. at 576).

16. Cause exists in this case to grant Ms. Authement relief from the automatic stay. First, there will be no prejudice to the Debtors or their bankruptcy estates. Ms. Authement's claim will need to be liquidated, and Ms. Authement does not believe it likely that the Debtors' key personnel will be required to attend depositions or trial in the California Action, particularly since the Debtors divested their interest in the MiraDry System long before the Petition Date.

17. Further, the hardship that will be suffered by Ms. Authement far outweighs any potential hardship to the Debtors if Ms. Authement is not granted relief from the automatic stay. Ms. Authement suffered the serious medical injuries and is seeking general, compensatory, and punitive damages. Even beyond the delay in Ms. Authement's right to receive a payment on account of her significant injuries, any delay in the California Action necessarily runs the risk of witnesses' availability to testify.

18. Ms. Authement has paid, and will continue to pay, an appreciable price, physically and emotionally, as direct result of the injuries she sustained by the procedure. The California

16660882/3

Action commenced well before the Petition Date, and the parties investigated the matter. Further, formal discovery has been completed and a summer 2024 trial has been set. Given the injuries sustained and the advanced nature of the proceedings, failure to litigate the California Action to conclusion may result in Ms. Authement not having an adequate remedy at law.

19. Ms. Authement need only prove the third *Rexene* prong with a showing that is "very slight," *Rexene Prods.*, 141 B.R. at 578. "Only strong defenses to state court proceedings can prevent a bankruptcy court from granting relief from the stay in cases where . . . the decision-making process should be relegated to bodies other than this court." *Id*. (quoting *Fonseca v. Philadelphia Housing Authority*, 110 B.R. 191, 196 (Bankr. E.D. Pa. 1990)). The facts set forth in the Complaint provide sufficient probability to support a damages award in favor of Ms. Authement. Ms. Authement did nothing to contribute to the cause of the injuries nor could she have known the consequences that would result.

20. By contrast, Debtors designed and manufactured a defective and unsafe productive with a high risk of danger that outweighed any benefits of the design itself. Safe alternative designs were available at the time of manufacture but not used, and the Debtors knew the risks inherent in the MiraDry System and failed to warn of the dangers associated with the foreseeable use of the MiraDry System. Thus, no "strong defense" exists concerning liability in the matter. Accordingly, Ms. Authement submits the *Rexene* factors have been met, warranting relief from the automatic stay.

21. In addition, this Court has broad jurisdiction to supervise the administration of claims but claims arising from personal injury are expressly excluded. 28 U.S.C. § 157(b)(5). Therefore, the usual purpose of providing a "central forum to adjudicate claims against the Debtors," *see*, *e.g*., *15375 Memorial Corp. v. Bepco, LP* (*in re 15375 Memorial Corp*.), 589 F.3d

605, 622 (3rd Cir. 2009), does not apply to Ms. Authement's claims.

22.    Ms. Authement believes that relief granted in connection with this Motion will be consensual and will have no meaningful effect on the administration of these cases and the Debtors' assets. Therefore, Ms. Authement respectfully submits that any order granting this Motion should be effective immediately upon its entry, notwithstanding the fourteen (14) day stay contemplated in Fed. R. Bankr. P. 4001(a)(3).

**WHEREFORE**, Ms. Authement requests that this Court (i) enter an order, substantially in the form appended hereto, lifting and modifying the automatic stay set forth in 11 U.S.C. § 362(a); and (ii) grant Ms. Authement such further relief as this Court deems just and proper.

Dated: April 16, 2024                              **MORRIS JAMES LLP**

*/s/ Christopher M. Donnelly*
Jeffrey R. Waxman (DE Bar No. 4159)
Christopher M. Donnelly (DE Bar No. 7149)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: cdonnelly@morrisjames.com

*Counsel for Lisa Authement*

16660882/3